STATE

v.

**Francisco  Antonio  BELLO.**

No.  78–460–C.A.

Supreme  Court  of  Rhode  Island.

July  25,  1980.

Dennis J. Roberts, II, Atty. Gen., Alfred French Goldstein, Spec. Asst. Atty. Gen., for plaintiff.

Paula Rosin, Asst. Public Defender, for defendant.

## OPINION

DORIS, Justice.

This is an appeal from a Superior Court judgment of conviction in which a jury found Francisco Antonio Bello (defendant) guilty of manslaughter. The defendant claims that the trial justice employed an improper legal standard at the pretrial hearing in assessing the voluntariness of his confession. He further claims that the trial justice used this legal standard when instructing the jury on how it was to determine the issue of voluntariness. We reject these arguments and affirm the judgment of the Superior Court.

At approximately 4:30 p. m. on November 14, 1976, Providence police responded to a call to investigate the first-floor apartment in a building located at 1197 Eddy Street. Upon arriving at the residence, police noticed that a window was broken and glass was strewn about the sidewalk. Inside the apartment police found the tenant, Joseph Serdynski, lying in a pool of blood with an ashtray stand lying across his body.

The defendant, who was a tenant living on the second floor of the building, was subsequently arrested as a murder suspect. Before defendant was transported to the police station for questioning, the police testified that he was given his *Miranda* rights two times and that following the second reading, he stated he was willing to tell them "anything [they] want[ed] to know."

Police testified that at the police station defendant was very nervous and that after he was given his *Miranda* rights for the third time, he read and signed a waiver-of-rights form. Police further stated that defendant did not request an attorney and that they used no pressure, threats, or direct or implied promises to elicit information from him.

Approximately forty-five minutes after defendant was brought in to the police station, he was asked to confirm whether he understood his rights. Police testified that defendant gave an affirmative response and that he then gave an oral statement admitting that he had killed Joseph Serdynski. A five page confession was subsequently typed out by the police with the help of defendant; and after defendant made some corrections, he signed the document.

The defendant's testimony stood in marked contrast to that of the police. He claimed that they forced their way into his apartment and arrested him. He denied that he made an offer to tell them "anything [they] want[ed] to know." When he requested an attorney, defendant claimed that the police became furious and screamed that as an alien in this country he had no such right.

The defendant testified that "[he] was scared to death" during the interrogation. At trial he stated, for the first time, that he had been arrested in Spain in March 1974 and that the Spanish police had physically abused him. He asserted that because of this prior experience, he believed the threats of two Providence policemen who told him to sign whatever was placed in front of him or they would sign for him with his blood. The defendant testified that after the police had unilaterally prepared a written statement, he signed it.

At the pretrial hearing the trial justice ruled that defendant's confession was voluntary, and he denied the motion to suppress the confession as well as the incriminating tangible evidence discovered therefrom. At trial, after the jury was instructed on the legal standard in assessing the voluntariness and credibility of the confes-

sion, defendant was found guilty of manslaughter.

On appeal defendant challenges the legal standard of voluntariness used by the trial justice. He points out that the constitutional test for evaluating voluntariness is the "totality of circumstances" surrounding a confession. *Haynes v. Washington* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513, 521 (1963). He asserts that although this test includes many cumulative objective factors, an accused's state of mind is a crucial determinant that cannot be excluded from consideration. *See Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *State v. Nagle*, 25 R.I. 105, 54 A. 1063 (1903).

In this case defendant maintains that the trial justice explicitly instructed the jury not to consider defendant's state of mind in assessing the voluntariness of his confession. The trial justice's elimination of this factor, defendant argues, manifested an unequivocal commitment to a purely objective test, which commitment was violative of his constitutional rights.

■ It is well established that the question of voluntariness of confessions is controlled by the Fifth Amendment and is made applicable to the states under the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The protections against self-incrimination afforded under the Fifth Amendment are personal. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In making an assessment of whether these personal protections have been violated, the totality of relevant circumstances are considered. *Culombe v. Connecticut*, 367 U.S. at 606, 81 S.Ct. at 1881, 6 L.Ed.2d at 1060. Each case, therefore, turns on its peculiar individual relevant set of facts and attendant circumstances.

■ In this state both the justice and the jury make their respective determinations about the voluntariness of confessions. *Andrews v. Langlois*, 105 R.I. 456, 459, 252 A.2d 450, 452–53 (1969). The trial justice must conduct a preliminary hearing in the jury's absence to determine if the confession obtained was in violation of a defendant's rights against self-incrimination; if the evidence is introduced at trial, the trial justice must then instruct the members of the jury to make their independent determination. *State v. Leavitt*, 103 R.I. 273, 237 A.2d 309, *cert. denied*, 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968). The jury must consider if the state has shown, by clear and convincing evidence, that defendant was apprised of his rights and made a voluntary confession. *State v. Espinosa*, 109 R.I. 221, 230, 283 A.2d 465, 469–70 (1971).

■ If the trial justice has followed these procedural requirements, we shall then examine the record to determine "whether from the evidence adduced thereat, and viewed most favorably to the state, this court could say that the trial justice's decision was clearly erroneous." *State v. Espinosa*, 109 R.I. at 229, 283 A.2d at 469.

In the present case the trial justice met the procedural safeguards set forth in *Leavitt*. Our concern, therefore, is directed to an independent examination of the record to review the evidence and legal standards to determine if the trial justice's actions were clearly erroneous.

At the pretrial hearing the trial justice concluded there was nothing in the evidence to substantiate defendant's claim that he was afraid of being beaten and that, in fact, the evidence indicated that defendant wanted to cooperate and to make a voluntary inculpating statement.[1] The trial justice's determination of the voluntariness of defendant's confession did involve an evaluation of defendant's mental state. Although defendant was understandably

---

1. The trial justice's conclusion is not without support: "a confession made by a person in custody is not always the result of an overborne will. The police may be midwife to a declaration naturally born of remorse, or relief, or desperation, or calculation." *Culombe v. Connecticut*, 367 U.S. 568, 576, 81 S.Ct. 1860, 1864, 6 L.Ed.2d 1037, 1043 (1961).

nervous on the night of his arrest, the trial justice found that the degree of emotional distress exhibited by defendant did not necessarily prevent him from making a knowing and voluntary confession. *See State v. LaRosa* 112 R.I. 571, 313 A.2d 375 (1974). The evidence does not support any assertion that defendant was so agitated as to be incapable of rational thought and action.

The defendant cites many authorities to buttress his argument that an accused's state of mind is an indispensable relevant factor in determining the voluntariness of a confession. *See e. g., Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Fikes v. Alabama*, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246, *reh. denied*, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 561 (1957). In those cases the defendants' education was so limited, or their mental capacity so impaired, as virtually to drain their powers of resistance or self-control during the emotional pressures of a police interrogation. In the present case, however, the evidence does not indicate that defendant's education was limited or his intelligence impaired. In fact, the precision of defendant's testimony supports the trial justice's judgment that defendant made a conscious and willing decision to cooperate with the police.

The trial justice's refusal to believe defendant's testimony that his confession was coerced was also reinforced by the substantial and convincing police testimony. Our review of the record does not reveal that the manifest attitude of the police toward defendant was such as to overbear his will and produce a confession not freely determined. *United States v. Tafoya*, 459 F.2d 424 (10th Cir.1972); *Milton v. Wainwright*, 306 F.Supp. 929 (S.D.Fla.1969), *aff'd*, 428 F.2d 463 (5th Cir.1970), *aff'd*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). Neither the length nor the substance of what occurred during the interrogation indicated any systematic design to use threats, promises, or physical intimidation to overcome defendant's will.

■ We believe that the trial justice was not clearly erroneous in his pretrial ruling to admit the confession and that he afforded defendant his full constitutional privileges.

Next, defendant claims that at trial the jury instructions were deficient in that they centered on the conduct of the police and effectively did not permit consideration of defendant's mental condition regarding the voluntariness of his confession.[2]

We have held that when instructing a jury a trial justice must be careful not to prejudice either party by " 'consciously or unconsciously conveying * * * his impression as to the proper weight to be given to any of the testimony.' " *Macaruso v. Massart, 96 R.I. 168, 172, 190 A.2d 14, 17 (1963).*

■ The record shows that the trial justice instructed the jury to decide whether the state proved, beyond a reasonable doubt, that defendant was given his *Miranda* rights and whether the confession was voluntary.[3] The jury was presented with testimony concerning defendant's arrest in Spain some years earlier. It was also instructed that the experience of the prior

2. The trial justice informed the jury that the test in assessing the voluntariness of a confession is an

"[O]bjective [one] directed against the police who had him in custody. * * * If you find on the testimony that this defendant made a confession because of a bad prior experience, that is not sufficient to make it an involuntary statement of the accused. * * * [T]here must be threats, promises, coercion, physical abuse, directed by the law enforcement agency against this defendant. * * * [T]he state must prove to you beyond a reasonable doubt that the constitutional safeguards were given, but those

safeguards are directed against the conduct of the police, not the state of mind of the accused when he was in a custodial surrounding."

3. The trial justice's instructions imposed a higher burden of proof on the state than is required by state law. In proving the admissibility of the evidence, as opposed to elements of the substantive crime, the standard of proof in this jurisdiction is " 'clear and convincing evidence' " and not " 'beyond a reasonable doubt.' " *State v. Gianoulos*, R.I., 404 A.2d 81, 84 n.2 (1979); *State v. Espinosa*, 109 R.I. 221, 230, 283 A.2d 465, 469–70 (1971).

arrest, even with defendant's claim that he was "afraid [he] was going to be beaten because [he] was beaten once before," was not sufficient by itself to make defendant's statement involuntary. We do not find that this instruction constituted reversible error.

 We also find the trial justice was not in error when he instructed the jury that "those [Fifth Amendment constitutional] safeguards are directed against the conduct of the police, not the state of mind of the accused when he was in a custodial surrounding." These jury instructions did not eliminate state of mind as a consideration in determining the voluntariness of a confession but rather stressed that violation of *Miranda* safeguards is proven by police conduct, not by defendant's mental state.

 The trial justice's jury instructions referred to the test for voluntariness of confessions as an "objective test." We consider this a misnomer. The substance of the instructions as a whole, however, met the ultimate test of whether a confession is made " 'freely, voluntarily and without compulsion or inducement of any sort.' " *Haynes v. Washington*, 373 U.S. at 513, 83 S.Ct. at 1343, 10 L.Ed.2d at 521. The affirmative presence of relevant factors indicating overbearance of the accused's will is what is important here. *United States v. Brown*, 557 F.2d 541, 548 n.5 (6th Cir.1977). Whether or not the accused's will is overborne must be judged by the " 'fundamental fairness and governmental fair play' " employed by police officials. *State v. Catlin*, 392 A.2d 27, 30 (Me.1978). In the adversarial setting of an interrogation, it is the police who seek the answers to a crime, and it is their zealous conduct that potentially could be such to overbear a defendant's will to resist questioning. *United States v. Reed*, 572 F.2d 412, 426 (2d Cir.) *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978); *United States v. Tafoya*, 459 F.2d at 426; *Robinson v. Smith*, 451 F.Supp. 1278, 1284–85 (W.D.N.Y.1978).

From a review of all the relevant factors relied upon by the trial justice in making his pretrial ruling and in issuing his instruc-tions to the jury, we conclude that his actions were not clearly erroneous and that he afforded the defendant his full constitutional privileges.

The defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.