STATE

v.

Fatima LIMA.

No. 87–482–C.A.

Supreme Court of Rhode Island.

June 29, 1988.

Thomas Dickinson, Annie Goldberg, Alton William Wiley, Asst. Attys. Gen., for plaintiff.

Morton Marks, Larry Dub, Providence, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal by the defendant, Fatima Lima, arising from her conviction of child abuse in the first degree under G.L. 1956 (1981 Reenactment) § 11–9–5.3(a), as

amended by P.L. 1983, ch. 179, § 1. The defendant asserts as reversible error, inter alia, the denial by the trial justice of a defense request to instruct the jury that intent is a necessary element of the crime with which the defendant was charged, the refusal by the trial justice to submit to the jury the question whether a statement made by the defendant was voluntary, the admission of testimony by the treating physician, the refusal to give an instruction to cure allegedly prejudicial remarks made by the prosecutor during the closing argument, the admission into evidence of two statements contained in a hospital record, and the denial by the trial justice of a motion for a judgment of acquittal. We reverse.

The facts as they relate to this matter are set forth below. Additional factual information is supplied as necessary. The defendant, a native of Portugal who had resided in the United States some seventeen years at the time the incident in question occurred, was convicted of first-degree child abuse for allegedly lowering the victim, a two-and-an-half-year-old boy, into a tub of scalding water. Lima completed five years of schooling in her native Portugal. She served as a babysitter for nine children, including the victim.

The victim's father testified at trial that on the afternoon of May 21, 1984, defendant called him at work and told him that the boy was injured when she placed him in a tub to clean him without first having tested the temperature of the water. The defendant later testified that the boy climbed into the tub himself. Her testimony was corroborated by four family members. The treating physician testified that the victim's burn marks were not consistent with an unassisted entry into the water.

The defendant was interviewed at the Pawtucket police station on the day that the incident occurred. She was given a prepared rights form that informed her that she was a criminal suspect and apprised her of her rights. A detective asked her if she understood what she read and she answered, "Not too good." The detective then reviewed her rights with her. The defendant signed the form, which contained a waiver of the right to have an attorney appointed for her.

The trial justice conducted a pretrial suppression hearing. The defendant testified during the hearing that she did not fully understand her rights. A detective present at the interrogation testified to the contrary. The trial justice tested defendant's claim that she did not understand her rights by having her read the rights form aloud. He concluded on the basis of testimony given by her that defendant understood her rights and agreed to answer questions because she viewed herself as innocent and thus not in need of an attorney.

The trial justice failed to submit to the jury the question whether the statement made by defendant to the detective was voluntary. He likewise declined to give a curative instruction in response to a comment made by the prosecutor during his summation that the physician who treated the victim concluded from the pattern of burns on the patient "that the child would have had to have been *lowered* into the tub." (Emphasis added.) The doctor in fact testified that he would have to assume that "the child *entered* the water first with his buttocks." (Emphasis added.)

I

■ The trial justice committed reversible error in refusing to instruct the jury that an intentional act is required to convict under § 11-9-5.3, the child-abuse statute.[1] Counsel for defendant requested

---

1. General Laws 1956 (1981 Reenactment) § 11-9-5.3, as amended by P.L. 1983, ch. 179, § 1, provides in pertinent part:

"Child abuse. —(a) Whenever any parent or other person with whom a child, as defined by section 40-11-2(1) has been placed by his or her parent, caretaker or by a licensed or governmental child placement agency for care and/or treatment abuses said child by inflicting upon said child a physical injury, to the extent that the child is permanently disfigured or disabled, he or she shall be guilty of child abuse in the first degree and, upon conviction,

an instruction that "in order to find the Defendant guilty of child abuse you must find beyond a reasonable doubt that the Defendant intentionally burned the child in hot water." As noted above, the trial justice refused to so instruct the jury.

As a general proposition, where the requisite intent is not defined in a statute establishing a criminal offense such intent should be explicated in an instruction. *See Marcinski v. United States*, 479 A.2d 856, 861 (D.C.App. 1984), *cert. denied*, 469 U.S. 1224, 105 S.Ct. 1216, 84 L.Ed.2d 357 (1985) (addressing necessity of instruction on distinction between specific and general intent).[2] Nowhere in his charge to the jury did the trial justice instruct it that in order to find defendant guilty, the jury was required to find beyond a reasonable doubt that defendant intentionally inflicted upon the victim a physical injury that caused said child to become permanently disfigured or disabled.

Our review of the record, and most specifically the charge as given, indicates that the jury may have convicted defendant because she injured the child by placing him in the water, without finding that she inflicted the injury intentionally. *See State v. Young*, 67 N.C.App. 139, 142, 312 S.E.2d 665, 668 (1984). As a result, there must be a new trial.

■ We note that a number of states apply a standard similar to that set forth in the Model Penal Code, § 2.02(3) at 226 (A.L.I. 1985) (the code), in situations in which the requisite level of intent is not set forth within the statutory scheme in question. The code provides that "[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts purposely, knowingly or recklessly with respect thereto." *Id.* We deem such standard to be appropriate in the instant matter. Thus, upon retrial we direct the trial justice to instruct the jury in accordance with the standard set forth above.

*See State v. Adams*, 62 Ohio St. 2d 151, 152–53, 404 N.E.2d 144, 146 (1980) (requiring only a showing of recklessness in an "endangering children" statute). We view such an instruction as protecting a defendant from a conviction predicated upon an act devoid of mens rea while at the same time protecting a class of defenseless victims from physical abuse.

II

The trial justice conducted a pretrial suppression hearing to determine whether defendant voluntarily waived her right to remain silent and have the assistance of counsel. The defendant made a statement that the defense asserts was inculpatory.

During the suppression hearing two parties testified, defendant and Detective Maurice Lapierre (Lapierre), who took defendant's statement. The detective testified that defendant made a statement after reading her constitutional rights, as set forth on a rights form. According to Lapierre, defendant stated that she understood her rights and signed the form, which contained a waiver of the right to have an attorney appointed for her. The detective opined that defendant waived her rights voluntarily.

The defendant testified that upon reading the rights form, she did not understand them too well. She stated that Detective Lapierre then reviewed her rights with her and that she understood some but not all of them. She also stated that she was telling the truth when she made the statement to Detective Lapierre. The trial justice asked defendant to read the rights form. Relying upon his observation of her reading skills and her demeanor, he concluded that defendant understood her rights and knew what she was doing when she made the statement.

■ This court has previously held that when a defendant challenges the voluntariness of a statement or a confession, the trial justice is required to conduct a prelimi-

---

be imprisoned for a period of not less than five (5) years or more than ten (10) years."

**2.** An instruction with regard to intent is obviously inappropriate in cases where a statute was clearly intended to give rise to strict liability for the violation thereof.

nary hearing outside the presence of the jury. The statement is admissible if an examination of the totality of the circumstances surrounding the interrogation shows, by clear and convincing evidence, that the defendant voluntarily waived the right to remain silent and have the assistance of counsel. *State v. Ferola*, 518 A.2d 1339, 1345 (R.I. 1986). The trial justice very ably conducted such a hearing and correctly concluded that the statement given by defendant was indeed voluntary.

However, our inquiry is not at an end. We require, as a further constitutional safeguard, that when the trial justice admits such statement, he or she must specifically instruct the jury that before it may consider the evidence substantively it must determine that the inculpatory statement was not obtained in violation of the defendant's constitutional guarantees. *State v. Bello*, 417 A.2d 902, 904 (R.I.1980); *State v. Benton*, 413 A.2d 104, 113 (R.I.1980).[3] This he did not do. As a result, there must be a retrial on this ground as well. Because we are satisfied that the trial justice correctly determined that the statement given by defendant was made voluntarily, the trial justice need not again address the voluntariness issue. The trial justice must, however, instruct the jury that before it considers the content of the statement substantively, it must first make a determination that the statement given by defendant was indeed voluntary. *Id.*

### III

■ The defendant asserts that the trial justice committed reversible error in admitting testimony by the treating physician that in his opinion the burns sustained by the victim were not consistent with those of a child who is in a bathtub of water when the water is turned on. We hold such testimony to be admissible.

This court has long held that we require that expert testimony speak in terms of strong probability, not mere possibility. *State v. Adams*, 481 A.2d 718, 727 (R.I. 1984). *Adams* does not require of the expert the use of the talismanic phrase "strong probability." The expert must merely testify to the effect that he reached his conclusion with reasonable medical certainty. Our review of the record indicates that the physician offered his conclusion

---

**3.** It is obvious that the direction given in *State v. Bello*, 417 A.2d 902 (R.I.1980), differs from the direction set forth in *State v. Benton*, 413 A.2d 104 (R.I.1980). In *Benton* the court relying upon *State v. Espinosa*, 109 R.I. 221, 228–30, 283 A.2d 465, 468–69 (1971), stated that prior to considering a confession as substantive evidence of guilt, the jury must be instructed to determine that the confession was not obtained in violation of the defendant's constitutional protections. The burden of proof for this determination was stated as "beyond any reasonable doubt." 413 A.2d at 113. In that same case the court held that prior to finding evidence of a confession to be admissible, the trial justice must find by "clear and convincing evidence" that the evidence sought to be excluded was not illegally obtained. Id. Thus the court established differing burdens of proof for a finding by the court that evidence was admissible and for a finding by the jury that the evidence should be substantively considered as voluntary.

Shortly thereafter, in *State v. Bello*, 417 A.2d at 905 n. 3, the court observed in regard to jury instructions on voluntariness:

"The trial justice's instructions imposed a higher burden of proof on the state than is required by state law. In proving the admissibility of the evidence, as opposed to elements of the substantive crime, the standard of proof in this jurisdiction is ' "clear and con-

vincing evidence" ' and not ' "beyond a reasonable doubt" '. *State v. Gianoulos*, R.I., .404 A.2d 81, 84 n. 2 (1979); *State v. Espinosa*, 109 R.I. 221, [228], 283 A.2d 465, [468–469] (1971)."

We take this occasion to bring into harmony these conflicting determinations of the burden of proof. We are of the opinion that we shall follow *State v. Bello* in requiring that the same burden of proof "by clear and convincing evidence" be applied by the trial justice in determining the admissibility into evidence of a statement or confession and also applied in instructing a jury concerning their obligation to determine constitutional voluntariness prior to considering the confession or statement as substantive evidence of guilt.

We reach this determination fully mindful of the fact that the Supreme Court of the United States has adopted a fair preponderance test for the admissibility of a statement or confession in *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In the latter case the Supreme Court suggested that the states are free, pursuant to their own law, to adopt a higher standard. We choose to maintain the clear and convincing evidence standard set forth in our prior cases.

with the requisite degree of medical certainty. Thus, the testimony offered by the expert was admissible.

## IV

The trial justice refused to give a curative instruction in response to an erroneous statement made by the prosecutor that the physician who treated the victim concluded on the basis of the victim's burn marks that the child had been lowered into the tub of scalding water. Counsel moved for a mistrial or, in the alternative, for a curative instruction with regard to the allegedly prejudicial remark. The trial justice offered only a general instruction that the closing remarks of counsel do not constitute evidence. He further charged the jurors that they should rely upon their own recollections of the facts, not the recollections of opposing counsel or, for that matter, the court.

When the defense complains of allegedly prejudicial remarks made by a prosecutor, the trial justice must assess the potential for prejudice to the defendant inhering in such remarks. It is within the sound discretion of the trial justice to declare a mistrial if justice so warrants. If the trial justice finds that the prejudice can be cured, a cautionary instruction must be given. The ruling of the trial justice is to be accorded great weight and will not be disturbed on appeal unless clearly wrong. *State v. Mello*, 472 A.2d 302, 304 (R.I. 1984).

In the instant matter, the inaccurate statement made by the prosecutor went directly to the question of defendant's guilt. If the jury found that defendant did not place the victim in the tub of scalding water, she could not be convicted of the criminal offense with which she was charged. There is no question that such statement was prejudicial. The prejudicial impact of the evidentiary misstatement could easily have been cured by a timely and effective cautionary instruction. The failure to offer such an instruction constituted reversible error. 472 A.2d at 304–05.

## V

The defendant asserts that the trial justice committed reversible error in admitting into evidence two statements contained in the medical records of the hospital that treated the victim. The statements objected to follow:

1. "Family states that they will not take either of the children to the babysitter."
2. "According to the child's father, the child was submerged in hot water by his babysitter."

The latter statement was a redacted version of a more inculpatory statement. Counsel for the defense timely interposed an objection to both statements. The statements objected to are hearsay. As such, they are excludable unless they fall within one of the clearly defined exceptions to the hearsay rule. *State v. Pina*, 455 A.2d 313, 315 (R.I. 1983). One such exception that we recognize is the medical-diagnosis exception, under which statements by a patient to his physician relating to his physical condition and the cause thereof are admissible. We admit such information because a person receiving treatment will presumably be truthful to the physician treating him. *Id.* We limit the reception of such evidence to information supplied by the patient that will assist in the diagnosis or treatment of the patient's ailments. *Id.* This is particularly so with regard to statements tending to fix fault because such statements lack the same reliability for truthfulness that inhere in statements related to diagnosis and treatment. *Id.*

Applying the rule set forth in *Pina*, we hold that both statements should have been excluded because they were not reasonably related to either treatment or diagnosis and were highly prejudicial to defendant. The victim's father is free on retrial to testify. Such testimony may be received, subject to compliance with the Rhode Island Rules of Evidence.

## VI

The defense asserts that the trial justice committed reversible error in denying defendant's motion for a judgment of

acquittal. We hold that the trial justice correctly denied said motion.

The only question before the trial justice in passing upon a motion for judgment of acquittal is whether the evidence presented by the state is capable of generating proof beyond a reasonable doubt. "The trial justice, and this court on appeal, must view the evidence in the light most favorable to the state, without assessing its credibility or weight, and must draw from such evidence all reasonable inferences that are consistent with the guilt of the accused." *State v. Wheeler*, 496 A.2d 1382, 1389 (R.I. 1985). We are also mindful of the fact that although no witness testified that defendant lowered the victim into scalding water, the state may rely entirely upon circumstantial evidence as long as the totality of such evidence constitutes proof of guilt beyond a reasonable doubt. *State v. Caruolo*, 524 A.2d 575, 581 (R.I. 1987). We are unable to say on this record that the trial justice committed reversible error in denying defendant's motion for a judgment of acquittal.

We have considered the defendant's other assignments of error and find them to be devoid of merit.

The appeal of the defendant is sustained, and the judgment of the trial court is reversed. The case is remanded for a new trial in accordance with this opinion.