**STATE**

v.

**Eduardo TAVAREZ.**

**No. 88–611–C.A.**

Supreme Court of Rhode Island.

March 30, 1990.

James E. O'Neil, Atty. Gen., Jeffrey

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Terrence P. Donnelly, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before us on the state's appeal from the trial court's granting of defendant's motion to suppress tangible evidence, to wit, a .22–caliber pistol. The facts of the case are as follows.

On October 19, 1987, Rhode Island State Police Trooper Franklin Rohan was monitoring traffic speed with radar along a northbound stretch of Interstate 95 in the city of Warwick. At approximately 6:10 p.m., a vehicle passed Trooper Rohan showing a registered speed of seventy miles per hour on the radar apparatus. The speed limit in this area is fifty-five miles per hour. Trooper Rohan immediately gave pursuit to this vehicle, which he described as a late-model Nissan Maxima, grey in color, with dark-tinted windows, and bearing New York license plates. As Trooper Rohan closed in behind the suspect vehicle, he activated his roof-mounted emergency lights and flashing headlights. Subsequently, through the rear window of the grey vehicle, he observed the silhouette of the driver, later identified as defendant Eduardo Tavarez, make two suspicious movements. The first movement had defendant leaning forward toward the floor area in front of the driver's seat. The second movement involved defendant leaning sideways across the front-passenger seat and then returning to an upright position. Immediately after making this second movement, defendant pulled over into the breakdown lane and stopped. Trooper Rohan pulled his state police cruiser in behind the suspect vehicle, alighted from his cruiser, and approached the vehicle. Because of the dark tint of the windows, Trooper Rohan was unable to see anything inside the vehicle. He then tapped on the driver's window, and defendant rolled the window down. Trooper Rohan then observed that defendant was the only occupant of the vehicle and had nothing in his hands. The trooper ordered the defendant out of the vehicle and escorted him to the area between the two automobiles. Rohan then had defendant place his hands in the air and conducted a pat-down search of his outer clothing. This search revealed an unloaded .22–caliber pistol concealed in the right front-pocket of defendant's trousers.

After a determination was made that defendant did not have a license to carry this weapon, he was placed under arrest. The defendant was charged with one count of carrying a pistol without a license in violation of G.L.1956 (1981 Reenactment) § 11–47–8, and one count of possession of a pistol by an alien in violation of § 11–47–7, as amended by P.L.1983, ch. 300, § 1. Prior to trial, defendant filed a motion to suppress the weapon seized on the ground that it constituted the fruit of an illegal search made in violation of article 1, section 6 of the 1986 Rhode Island Constitution and the Fourth Amendment to the United States Constitution. On October 12, 1988, this motion was granted by a justice of the Superior Court.

The state raises two issues in this appeal, which we shall consider separately.

I

THE TRIAL JUSTICE ERRED IN FINDING THAT THE SEARCH OF DEFENDANT WAS UNCONSTITUTIONAL

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court promulgated the principle that a police officer, when con-

fronted with suspicion of criminal activity not rising to the level of probable cause, may engage in an investigative stop of a person, and if his suspicions are not dispelled by this stop and accompanying inquiry, he may perform a limited "patdown" search of a suspect's outer clothing for weapons if he has reason to believe the person may be armed and dangerous. Later, in *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981), the Court expanded the so-called *Terry* Doctrine and concluded that, in reviewing the constitutionality of an investigative stop, the "totality of the circumstances" surrounding the stop must be considered. The *Cortez* Court formulated two elements to be utilized in this determination:

> "First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions * * * that might well elude an untrained person.
> "Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 418, 101 S. Ct. at 695, 66 L.Ed.2d at 629.

We have specifically applied the reasoning employed in *Cortez* in several cases. *In Re John N.*, 463 A.2d 174, 177 (R.I. 1983); *State v. DeMasi*, 448 A.2d 1210, 1212 (R.I.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983); *State v. Roberts*, 434 A.2d 257, 261 (R.I. 1981). Applying the totality of the circumstances principle from *Cortez* to the facts of the case at bar, we are compelled to the conclusion that Trooper Rohan was justified in his stopping of defendant and performing a pat-down search of his clothing.

■ There is no question that defendant was speeding at the time he was stopped, and once stopped, Trooper Rohan needed no further justification in ordering him out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

■ Trooper Rohan testified that he observed defendant make two furtive movements after he had been signaled to pull over. Although this court has held that furtive gestures alone are not sufficient to justify a *Terry* type of search, *see State v. Dechene*, 114 R.I. 276, 332 A.2d 125 (1975), there are additional facts in this case that heighten the suspicious nature of defendant's movement. First, Trooper Rohan testified that defendant's movements were made immediately after he had activated his emergency lights signaling defendant to stop, as if they were made in *reaction* to it. Additionally, Trooper Rohan testified that, drawing from his experience as a law-enforcement officer, drivers often make movements similar to those made by defendant in attempts to gather their driver's licenses or registrations from some other areas of their vehicles. When Trooper Rohan approached the defendant's vehicle, however, and was first able to look at defendant after defendant had rolled the window down, he had no license, registration, or the like in his hands or anywhere about him. This served to dispel any innocent explanation for the furtive movements and to increase Trooper Rohan's suspicions that defendant had either secreted something in or gathered something from the front-floor area of the vehicle.

These facts, when weighed with the very great risk police officers encounter during routine traffic stops, *Mimms*, 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336–37, and society's great interest in ensuring the safety of police during such procedures, lead us to the conclusion that Trooper Rohan acted reasonably and that his subsequent pat-down search of defendant did not violate Fourth Amendment standards or the parallel provisions of the Rhode Island Constitution in light of the cases cited above. Consequently we find that the trial justice erred in concluding that the search of defendant was unconstitutional.

## II

### BURDEN OF PROOF

The United States Supreme Court has held that at a suppression hearing, the government should be required to demonstrate that the evidence it offers is admissible by a "preponderance" standard of proof. *Colorado v. Connelly,* 479 U.S. 157, 168–69, 107 S.Ct. 515, 523, 93 L.Ed.2d 473, 485 (1986); *United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242, 253 n. 14 (1974). The Supreme Court has suggested, however, and we have previously acknowledged, that the states are free to adopt higher burdens of proof for the prosecution to satisfy at suppression hearings should they choose to do so. *State v. Lima,* 546 A.2d 770, 773 n. 3 (R.I.1988) (citing *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)).

In *Lima,* we held that the proper burden to place on the state when the voluntariness of a defendant's confession is challenged should require the state to show by "clear and convincing" evidence that the confession was voluntarily made. 546 A.2d at 773 n.3. We have likewise held in *State v. Leavitt,* 103 R.I. 273, 289–90, 237 A.2d 309, 318, *cert. denied,* 393 U.S. 881, 89 S.Ct. 185, 21 L.Ed.2d 155 (1968), that the "clear and convincing" standard is also the proper burden when the defendant challenges that the defendant's consent to search his automobile was made freely and voluntarily.

We must distinguish *Lima,* however, from the case at bar in concluding that the proper burden to be placed on the state in the instant case should be the "fair preponderance" standard as set forth in *Matlock,* 415 U.S. at 178 n. 14, 94 S.Ct. at 996 n. 14, 39 L.Ed.2d at 253 n. 14. We are not here dealing with a challenge to the state's introduction of confessions or statements of a defendant that are fraught with the possibility of being the product of government manipulation, misinterpretation or coercion. Rather we are here faced with a situation in which the state seeks to introduce reliable, tangible evidence that by its very presence upon defendant's person constituted the commission of a felony. The only issue before the trial justice was the credibility of Trooper Rohan's testimony concerning the facts leading to the *Terry* type of search of defendant. This being so, we decline to impose the clear and convincing standard in respect to cases involving the establishment of reasonable suspicion or probable cause for Fourth Amendment purposes. We believe that the "fair preponderance" standard employed by the Supreme Court in *Connelly, supra,* and *Matlock, supra,* places a sufficient burden upon the state at a Fourth Amendment suppression hearing. There the state must establish the factual predicate to justify the introduction of totally reliable tangible evidence.

To the extent that *Leavitt, supra,* as a Fourth Amendment case is inconsistent with this holding, it is no longer controlling. In concluding that the state in *Leavitt* was required to show by "clear and convincing evidence" that the defendant's consent to search his vehicle was made freely and voluntarily, we were relying on the Ninth Circuit's holding in *United States v. Page,* 302 F.2d 81 (9th Cir.1962). Clearly the holding in *Page* has been superseded by the holdings of the United States Supreme Court in *Matlock, supra,* and other cases.[1]

For the reasons stated herein, the state's appeal is sustained, and the order of the trial justice granting the defendant's motion to suppress is reversed. The papers in the case may be remanded to the Superior

---

1. It is somewhat questionable from the trial justice's decision whether the application of a fair preponderance standard would have affected his determination of the existence of reasonable suspicion. We are of the opinion that his findings of fact were consistent with the existence of reasonable suspicion as that term has been defined in *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). We have applied the trial justice's findings of fact to the legal standard set forth in *Cortez* in the exercise of our independent judgment. *See Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *accord State v. Roberts,* 434 A.2d 257, 264 (R.I.1981).

Court for further proceedings consistent with this opinion.