# STATE

v.

## Roberto COLLODO.

No. 94–54–C.A..

Supreme Court of Rhode Island.

June 26, 1995.

Jeffrey Pine, Atty. Gen., Annie Goldberg and Aaron Weisman, Asst. Attys. Gen. for plaintiff.

William J. Murphy and Joseph A. Bevilacqua, Providence, for defendant.

## OPINION

LEDERBERG, Justice.

The State of Rhode Island has appealed to the Supreme Court the granting of the defendant's pretrial motion to suppress evidence obtained in a "pat-down" search of the defendant. The issue presented is whether, as is consistent with the rights guaranteed by the United States Constitution and the constitution of this state, the defendant, Roberto Collodo, who was riding in a vehicle that was legally stopped for a traffic violation, could be ordered out of the vehicle and subjected to a pat-down search of his outer garment. After careful review, this court has concluded in this case that a police officer may constitutionally order a passenger to leave the vehicle and may pat down that passenger's outer garment. Consequently, we sustain the state's appeal and reverse the order that granted the motion to suppress evidence.

### Facts and Procedural History

The facts insofar as pertinent to this appeal follow. At approximately 4 p.m. on March 18, 1993, Trooper Frank Castellone (Castellone) of the Rhode Island State Police observed a vehicle identified as a "1982 Datsun bearing New York registration" traveling northward on Interstate 95 in the town of Hopkinton at a "high rate of speed." After clocking the vehicle traveling at seventy-five miles per hour for "well over a mile," Castellone activated his overhead emergency lights and signaled the vehicle to pull over.

Once the vehicle had stopped, Castellone approached the driver and asked to see his driver's license and the vehicle's registration. The driver did not produce a license but instead showed Castellone "what appeared to be some sort of identification card from the Dominican Republic." While Castellone was speaking with the driver, he noticed that defendant, who was sitting in the front passenger seat, was "fidgeting [and] looking straight forward, looking down" and did not make eye contact with him. Castellone then went around to the passenger's side of the vehicle and asked defendant if he had a license. The defendant produced a New York State driver's license bearing his photograph and the name Roberto Collodo. Castellone then asked defendant to step out of the vehicle, and defendant complied. According to Castellone, defendant "shied away from [him] on one side," and as he moved toward defendant, defendant "kept moving away." Castellone attempted to touch defendant's upper body, and defendant again moved away. When Castellone finally was able to touch defendant's "upper left side," he felt a "hard object." At that point, Castellone testified, he suspected that the object was a weapon, and he again attempted to move toward defendant, who "kept trying to

move away." According to Castellone, he had "actually [to] grab on to [defendant's] shoulder and pull [defendant] towards [him]" to stop defendant from moving away. Castellone then reached into the inside pocket of defendant's outer garment and removed a loaded .38–caliber revolver whose serial number had been obliterated.

The defendant was arrested and charged with carrying a revolver without a license in violation of G.L.1956 (1981 Reenactment) § 11–47–8, as amended by P.L.1992, ch. 460, § 1. Pursuant to Rule 41(f) of the Superior Court Rules of Criminal Procedure, defendant moved to suppress the revolver as evidence on the ground that it was "illegally seized without [a] warrant." After a hearing on December 1, 1993, the Superior Court granted defendant's motion to suppress, reasoning that because the officer "had no right to ask [defendant] to leave the vehicle," the subsequent pat-down search was illegal. In response, the state commenced the instant appeal pursuant to G.L.1956 (1985 Reenactment) § 9–24–32.

## Motion to Suppress

▬ When reviewing a decision on a motion to suppress, this court will not overturn the trial justice's findings unless they are clearly erroneous. *State v. Jenison,* 442 A.2d 866, 872 (R.I.1982). Moreover, when a defendant's constitutional rights are at issue, we must make an independent examination of the facts, the findings, and the record in determining whether his or her rights have been violated. *Id.* With these principles in mind, we begin our analysis in this case.

The conduct of Castellone involved two separate acts: that of asking defendant to leave the vehicle and that of frisking defendant once he left the vehicle. We first address the question of whether defendant, as a passenger, had a constitutional right not to be ordered to leave the vehicle once the vehicle had been lawfully stopped.

### The Order to Leave the Vehicle

▬ The defendant argued on appeal that his rights against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitu-

tion were violated when Castellone asked him to leave the vehicle because "[t]here was no reasonable belief, as enunciated in *Mimms,* and no 'valid reason', as enunciated in *Soares,* by the trooper that the defendant was armed and dangerous." We reject the proposition that *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), and *State v. Soares,* 648 A.2d 804 (R.I.1994) (per curiam), require that an officer have a reasonable belief or a valid reason to suspect that a person is armed and dangerous before he or she can order the person out of a lawfully stopped vehicle.

In *Mimms,* the United States Supreme Court held that it was reasonable and thus permissible under the Fourth Amendment for a State Police officer to order a driver out of a car after the car had been lawfully stopped. *See Mimms,* 434 U.S. at 110–11, 98 S.Ct. at 333, 54 L.Ed.2d at 336–37. Nowhere in the *Mimms* opinion did the Supreme Court suggest a requirement that the police officer have a reasonable belief that the defendant was armed and dangerous. In *Mimms* a police officer followed his practice of ordering all drivers out of their vehicles "as a matter of course whenever they had been stopped for a traffic violation." *Id.* at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. In fact, the Supreme Court pointed out that "[t]he State freely concede[d] the officer had no reason to suspect foul play from the [defendant] at the time of the stop, there having been nothing unusual or suspicious about his behavior." *Id.* at 109, 98 S.Ct. at 332–33, 54 L.Ed.2d at 336. Therefore, we are led to the conclusion that under *Mimms,* an officer may, as a matter of course, order a driver to step out of a lawfully stopped vehicle.

The issue of whether the reasoning in *Mimms* is applicable to passengers was addressed by this court in *Soares.* In that case Soares was a passenger in a vehicle that had been stopped for passing another vehicle in an unsafe manner. *Soares,* 648 A.2d at 805. The police officer asked the operator to step out of the car. When the operator said he could not identify Soares, who was sitting in the rear seat, the officer asked Soares to step out of the vehicle. *Id.* As Soares exited, a small bag containing a powdery substance

fell out of his clothing. The officer then noticed a suspicious bulge in the clothing and conducted a pat-down search. Soares at that point voluntarily removed "more packets from the front of his trunks." *Id.* After he was convicted, Soares appealed from the denial of his motion to suppress the packets seized.

In applying *Mimms* to the facts in *Soares,* this court determined that "the reasoning in *Mimms* should be extended to apply to any occupants of vehicles stopped for any valid reason" and held that the defendant's constitutional rights were not violated when he was ordered to leave the vehicle. *Soares,* 648 A.2d at 806.

In the instant case, the driver exceeded the speed limit by twenty miles per hour, and thus Castellone had a "valid reason" to stop the vehicle. By applying our reasoning in *Soares,* we are led to the conclusion that because the vehicle was lawfully stopped, no constitutional rights were violated by the officer's ordering defendant to leave the vehicle. Thus, Castellone's request that defendant leave the vehicle fully comports with the constitutional guarantees against unreasonable searches and seizures.

### The Pat–Down Search

We turn next to the issue of whether Castellone's pat down of defendant's outer garment violated his constitutional rights. The trial justice did not reach this issue because his ruling, made prior to our holding in *Soares,* held that an officer "had no right to ask" that defendant leave the vehicle. Therefore, we review this issue *de novo.*

In *Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 911 (1968), the United States Supreme Court held that

"where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken."

Thus, after balancing the need to protect police officers with the need to safeguard citizens against unreasonable searches and seizures, the Court concluded that an officer may conduct a carefully limited search of the outer clothing in an attempt to discover weapons provided that the officer was able to point to "specific and articulable facts" which warranted a person of reasonable caution in the belief that the action taken was appropriate. *Id.* at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The requirement that the officer be able to enunciate specific and articulable facts is essential because the "scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. When a decision to carry out a pat down "is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 363 (1979). It follows, therefore, that an officer's "inchoate and unparticularized suspicion or 'hunch'" will not suffice to justify a pat down. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

The United States Supreme Court expanded this so-called *Terry* doctrine in *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). In assessing whether a specific factual situation yields a "particularized suspicion," two elements must be present:

"First, the assessment must be based upon all the circumstances. The analysis

proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

\* \* \* \* \* \*

"The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629.

The *Cortez* formulation was adopted by this court in *State v. Tavarez*, 572 A.2d 276, 278 (R.I.1990), a case in which we concluded that an officer was justified in patting down the driver of a speeding vehicle.

In the case at bar, defendant was a passenger in a speeding vehicle, the driver of which was unable to produce either a driver's license or the vehicle's registration. The State Trooper observed that defendant was "fidgeting [and] looking straight forward, looking down" and did not make eye contact. After exiting the vehicle, defendant "shied away from [the trooper] on one side."

These observations and the totality of circumstances "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629. It is our opinion that the behavior of defendant, coupled with the situation in which defendant was found, could well raise a "particularized suspicion" in the minds of "those versed in the field of law enforcement" that defendant was engaged in or was about to engage in wrongdoing. *Id.* "Although this court has held that furtive gestures alone are not sufficient to justify a *Terry* type of search," *Tavarez*, 572 A.2d at 278, we are persuaded that the facts available to Castellone at the moment of the search were sufficiently "specific and articulable" to justify a pat down under *Terry*.

■ We note that although the patting down of a person's outer garments in an attempt to find weapons is an "intrusion upon the sanctity of the person" and thus not to be taken lightly, *Terry*, 392 U.S. at 17, 88 S.Ct. at 1877, 20 L.Ed.2d at 903, the search in this case was sufficiently confined in scope and in time so as to limit it to the discovery of hidden instruments that could be used to assault the trooper. *Id.* at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

■ We concur with the reasoning of the United States Supreme Court in *Mimms* that the state's concern for the safety of officers "is both legitimate and weighty." *Mimms*, 434 U.S. at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336. An officer approaching a vehicle confronts an "inordinate risk"; one study calculated that " 'approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile.' " *Id.* at 110, 98 S.Ct. at 333, 54 L.Ed.2d at 336–37. It is our concern for the exposure of an officer to such danger that, we believe, justifies the *de minimis* intrusion incurred in a limited pat-down search for weapons, once the officer has reasonably concluded that the facts available at that moment would "warrant a man of reasonable caution in the belief" that the pat down was justified. *Id.* at 112, 98 S.Ct. at 334, 54 L.Ed.2d at 337.

Our opinion today is not a *carte blanche* permit for officers to stop and pat down individuals absent an objective, articulable reason. We are satisfied that Castellone's actions were supported by articulable reasons and not by unfounded suspicions based only on furtive gestures. Therefore, we hold that the "pat-down search of defendant did not violate Fourth Amendment standards or the parallel provisions of the Rhode Island Constitution." *Tavarez*, 572 A.2d at 278.

Accordingly, we sustain the appeal of the state, reverse the granting of the motion to suppress, and remand the papers of this case to the Superior Court.

BOURCIER, J., did not participate.