STATE

v.

**Roger L. BERNIER.**

**No. 84–186–C.A.**

Supreme Court of Rhode Island.

April 26, 1985.

---

**3.**  Since resolution of this issue is dispositive, we need not address the other issues raised by petitioners.

Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

Charles J. Rogers, Jr., Providence, for defendant.

## OPINION

SHEA, Justice.

This is an appeal by Roger L. Bernier (Bernier) from his conviction in Kent County Superior Court of sexual offenses involving two minor females. Bernier was charged under two separate indictments and after trial was found guilty under indictment No. K2/82–265 of first-degree sexual assault in violation of G.L.1956 (1981 Reenactment) §§ 11–37–2 and –3, second-degree sexual assault in violation of §§ 11–37–4 and –5, and simple assault in violation of § 11–5–3. Under indictment No. K2/82–266, Bernier was found guilty of first-degree sexual assault, one count of second-degree sexual assault, and solicita-

tion to commit a crime in violation of § 11–1–9.

Bernier was sentenced to fifteen years' imprisonment, five years suspended, for each first-degree sexual assault; three years' imprisonment for each second-degree sexual assault; three years' imprisonment for solicitation to sell a controlled substance; and six months' imprisonment on the assault charge, all sentences to run concurrently. We sustain the defendant's appeal and remand the case for a new trial.

On appeal, Bernier essentially raises three issues: (1) the trial justice erred in consolidating the two indictments for trial, (2) the trial justice erred in refusing to allow the introduction of evidence involving one of the victim's prior sexual activities with other persons, and (3) the trial justice erred in permitting evidence of other sexual contact between defendant and one of the victims not part of the present indictment into evidence while refusing to allow into evidence proof of acquittal on the prior charge.

I

*Consolidation*

The evidence presented covered a series of sexual assaults. Indictment No. K2/82–265 charged Bernier with offenses involving a neighbor, Tammy.[1] Her testimony established that in the summer of 1979, when she was twelve years old, she accompanied her parents to Bernier's home to help work in his yard. Bernier asked Tammy to come into the house to help him prepare some drinks to serve. Once inside, he lured her to the basement bathroom, showed her sexually explicit photographs, removed some of her clothing, and put his mouth to her vagina. He warned her not to tell anyone. She said that she was afraid to tell her parents.

A few days after the incident just described, Tammy testified, she visited the Bernier home to play with his daughter.

He again lured her into the house, removed his pants, and forced her to put her hands on his penis. Shortly after this incident, Tammy told her parents about what had happened. Tammy's mother testified that the family had decided against filing charges in 1979 because they feared that the ordeal of testifying in court would be too much for twelve-year-old Tammy.

Tammy encountered Bernier again in February of 1982. At that time, she was working the neighborhood newspaper route and had stopped at the Bernier home to collect. Bernier, claiming to have only a $20 bill, invited her inside to wait while he looked for change. Once inside, he embraced her and pressed his chest to her breasts, but she struggled free and escaped.

The second indictment, No. K2/82–266, charged Bernier with offenses involving Carolyn,[2] the daughter of a close friend of Bernier's wife. Carolyn testified that she had known the Bernier family all of her life. At one time Bernier had purchased a dress for her to wear to a prom. Later, when he told Carolyn that she "owed him" for the dress, she, misunderstanding his meaning, offered to babysit for his son. Bernier responded by grabbing her and touching her breasts. She said she was afraid of him but told her mother only that he'd "made a pass" at her and pleaded with her mother not to confront Bernier about the incident.

The next episode testified to by Carolyn took place on Halloween, October 31, 1981. She had arrived at Bernier's home to take his young son out trick-or-treating. Bernier sent the boy out with another girl and detained Carolyn. He then touched her breasts, grabbed her arms, and forced her to take his penis into her mouth. On a later occasion, when visiting his home, Bernier took Carolyn with him on an alleged errand to a local store. Instead, he took her to the Pawtuxet Yacht Club in Cran-

---

1. This is not her real name.

2. This is not her real name.

ston, Rhode Island, where he forced her to engage in sexual intercourse on his boat.

During the trial, Carolyn testified, over objection, about an earlier encounter that had occurred in October 1981, which was not part of the indictment in this case. That episode also took place at the yacht club. When they arrived at the yacht club, Bernier warned Carolyn that if she told anyone about what was about to happen, he would kill her. She testified that he struck her face, pushed her to her knees, and forced her to engage in oral sex with him. She was fifteen years old when this incident occurred. She testified that she was too frightened to report the incident to her mother at the time. The October 1981 activity at the yacht club formed the basis of a separate indictment and trial for sexual assault in Providence County Superior Court that resulted in a not-guilty verdict.

On another occasion, in December 1981, during a visit at his home, Carolyn testified, Bernier took her into a room, gave her a quantity of marijuana, and ordered her to sell it. He then grabbed her hand, forced her to her knees, and again forced her to engage in fellatio.

By February 1982 Carolyn was living at Caritas House, a residential facility rendering treatment to persons with emotional problems and problems involving alcohol. Carolyn explained that when her counselor began to discover her history of sexual assaults, Carolyn decided to run away because she was afraid that if she revealed too much to her counselors, Bernier would kill her. She left the facility and called Mrs. Bernier for a ride to her mother's house. When the car arrived, Carolyn discovered that it was Roger Bernier alone who had responded to her call. He again forced her to perform oral sex upon him in the car and threatened to kill her if she told anyone.

■ The consolidation of the above two indictments for trial forms the basis of Bernier's first challenge on appeal. His attack is premised on the contention that he was prejudiced because of inadequate notice that the two indictments would be tried together. Our examination of the record, however, persuades us that there was no real prejudice. While formal consolidation occurred just prior to trial, both cases, numbered consecutively on the calendar, had been called ready on six occasions, beginning months before the trial date and up to three days before the trial began. The joinder of the two indictments, on the state's motion, was well within the discretion of the trial justice. His decision in favor of joinder will not be disturbed on review absent clear abuse. *State v. Young*, R.I., 414 A.2d 185 (1980). In this case, both indictments involved sexual offenses of a similar character committed under similar circumstances. Joinder is permitted under Rules 8, 13, and 14 of the Superior Court Rules of Criminal Procedure. These rules act as safeguards against harassment of defendants and unfair prosecutorial advantage and also address such public-policy concerns as the avoidance of costly and repetitive trials and the principles of due process. *State v. Ride*, R.I., 444 A.2d 854 (1982); *State v. Young*, R.I., 414 A.2d 185 (1980).

■ It is not sufficient for a defendant to cite the potential for prejudice. In claiming that joinder of two or more charges for trial is an abuse of discretion, a defendant must demonstrate substantial prejudice resulting from the joinder. *State v. Whitman*, R.I., 431 A.2d 1229 (1981). Disadvantage alone is not sufficient. *State v. Sharbuno*, 120 R.I. 714, 390 A.2d 915 (1978).

■ Our examination of the record discloses that the trial justice heard extensive argument on the matter of consolidation and carefully considered the kinds and similarities of the various charges in the two indictments. We find no evidence of either abuse of discretion or actual prejudice to defendant, nor does defendant demonstrate any.

## II

### *Evidence of Prior Sexual Acts with Persons Other Than the Accused*

■ Bernier next challenges the exclusion by the trial justice of evidence that Carolyn had engaged in sexual intercourse with an individual other than himself. Defense counsel offered this evidence to show that Carolyn was not the innocent girl she appeared to be and that this information would be relevant on the issue of consent. The trial justice excluded the evidence. In doing so, he was acting completely in accord with the provisions of § 11–37–13, commonly referred to as the "rape shield" statute, and with prior decisions of this court. "Evidence of a woman's prior specific sexual acts with persons other than the accused is so tenuously related to whether she consented to sex with the accused that it should be excluded as lacking in probative value and irrelevant to the issue of consent." *State v. Gibbons,* R.I., 418 A.2d 830, 836 (1980); *State v. Fitzsimon,* 18 R.I. 236, 240, 27 A. 446, 448 (1893); *see also McLean v. United States,* 377 A.2d 74, 78 (D.C.App.1977); Ordover, *Admissibility Of Patterns Of Similar Sexual Conduct: The Unlamented Death Of Character For Chastity,* 63 Cornell L.Rev. 90, 106 (1977); *accord, State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 28, 545 P.2d 946, 952 (1976); *People v. Whitfield,* 58 Mich.App. 585, 591–92, 228 N.W.2d 475, 478 (1975).

## III

### *Evidence of Prior Criminal Activity—Collateral Estoppel*

### A

Bernier's final argument is multifaceted. Initially he challenges the admission of evidence of another sexual assault not part of the case on trial. That testimony was given by Carolyn regarding the first incident at the Pawtuxet Yacht Club. That particular assault had formed the basis of an indictment in Providence County and a trial in the Superior Court resulting in an acquittal. In light of this court's prior decisions, this argument is hardly plausible.

■ The evidence of this earlier assault was not offered to show Bernier's propensity to commit the particular crime charged. If it had been offered for that reason, it would have had to have been excluded as irrelevant. It was offered, instead, to show the accused's " 'lewd disposition or * * * intent' " toward the victim. *State v. Jalette,* 119 R.I. 614, 627, 382 A.2d 526, 533 (1978). In *Jalette* this court held that evidence of other sex crimes with the particular person concerned that are not too remote in time to the crime on trial could be introduced as relevant on the issue of whether the accused bore this lewd disposition or intent toward the victim. The court also approved the introduction of evidence that the accused committed nonremote similar sexual offenses with persons other than the victim for the purpose of establishing the presence of one or more of the traditional exceptions to the general rule of exclusion such as intent, motive, or design. *Id.* The admission of such evidence came with the caveat that it "may be shown on the issue of intent only if it is absolutely necessary, such as instances where the accused admits the act but claims it was an accident or mistake * * *," and it should be used sparingly. *Id; see also State v. Whitman,* R.I., 431 A.2d 1229, 1231 (1981); *State v. Colangelo,* 55 R.I. 170, 173–74, 179 A. 147, 149 (1935). Carolyn's testimony was therefore relevant and admissible both in the case involving the victim Tammy and on the issue of Bernier's intent and lewd disposition toward Carolyn.

■ We take a moment at this juncture to clarify any misconception with respect to our holding in *State v. Pignolet,* R.I., 465 A.2d 176 (1983). The state takes the position that this evidence was also admissible under the exception in *Pignolet.* We disagree. Our holding in that case was very narrow. *Pignolet* involved evidence of a defendant's sexual conduct with a child not named in the indictment and was limited to

situations in which the testimony of siblings of tender years was necessary in order for the state to meet its burden of proof. Under such circumstances, the court could admit evidence of similar but uncharged sexual conduct closely related in time, place, age, and family relationships of victims where it was relevant, material, and highly probative of an accused's lecherous conduct toward the victims over whom the defendant exercised discipline, control, and supervision. *Pignolet* is therefore not applicable to the present case.

### B

■ The remaining portion of Bernier's argument focuses on his acquittal of the sexual-assault charge after trial in Providence County. He argues that the acquittal acts as a bar to the admissibility of such evidence. In the alternative, he contends that he should have been permitted to inform the jury of the previous acquittal. This is a matter of first impression in this jurisdiction. The various jurisdictions that have considered the question are divided. Some have held that the doctrine of collateral estoppel embodied in the double-jeopardy clause of the Constitution of the United States operates as a bar to the use at trial of such evidence when it resulted in acquittal in an earlier prosecution by the same sovereign. Other jurisdictions have concluded that the use of such evidence is not barred. *Compare United States v. Riley*, 684 F.2d 542, 546 (8th Cir.1982) (allowing use of evidence), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983); *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.1979) (same), *cert. denied*, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979); and *United States v. Castro-Castro*, 464 F.2d 336, 337 (9th Cir.1972) (same), *cert. denied*, 410 U.S. 916, 93 S.Ct. 971, 35 L.Ed.2d 278 (1973) with *United States v. Mespoulede*, 597 F.2d 329, 334–36 (2d Cir.1979) (barring use of evidence) and *Wingate v. Wainwright*, 464 F.2d 209, 212–14 (5th Cir.1972) (same). We agree with those jurisdictions that hold that the doctrine of collateral estoppel does not bar use of such evidence.

We join with the California Supreme Court, which held that "competent and otherwise admissible evidence of another crime is not made inadmissible by reason of the defendant's acquittal of that crime." *People v. Griffin*, 66 Cal.2d 459, 464, 426 P.2d 507, 510, 58 Cal.Rptr. 107, 110 (1967).

Nevertheless, "[r]egardless of its probative value, evidence of other crimes always involves the risk of serious prejudice, and it is therefore always 'to be received with "extreme" caution.'" *People v. Griffin*, 66 Cal.2d at 466, 426 P.2d at 511, 58 Cal. Rptr. at 111; *People v. Albertson*, 23 Cal.2d 550, 577, 145 P.2d 7, 20 (1944). Hence, some courts reason that "an acquittal so attenuates the weight that may properly be given evidence of another crime as to require the exclusion of such evidence altogether. *People v. Griffin*, 66 Cal.2d at 466, 426 P.2d at 511, 58 Cal.Rptr. at 111; *see also State v. Little*, 87 Ariz. 295, 307, 350 P.2d 756, 764 (1960); *People v. Ulrich*, 30 Ill.2d 94, 101, 195 N.E.2d 180, 183 (1963); annot. 86 A.L.R.2d 1120 (1962). We acknowledge that because of the higher standard of proof of guilt beyond a reasonable doubt evidence of an acquittal is not so convincing of innocence as a judgment of conviction is convincing of guilt. However, this fact goes to the weight, not the admissibility, of the evidence. *People v. Griffin*, 66 Cal.2d at 466 n. 3, 426 P.2d at 511 n. 3, 58 Cal.Rptr. at 111 n. 3.

■ Carrying this collateral-estoppel argument one step further, Bernier argues that the trial justice erred in refusing to instruct the jury that he had been acquitted of the prior activity on the ground that such evidence was immaterial and irrelevant to the issues on trial. Because we prefer to adopt a ruling that will be fairer to defendant and the state, we believe that the better rule would be to allow evidence of the acquittal either by stipulation, by the parties' testimony, or by an instruction from the trial justice. The admission of this evidence will give defendant an opportunity to weaken or rebut the prosecu-

tion's evidence of other crimes. Permitting the jurors to hear such evidence will assist them in their assessment of the significance of the evidence of other criminal activity by knowing that at another time and place, a jury, considering defendant's guilt or innocence of another crime, reached the conclusion that he or she was not guilty. *People v. Griffin,* 66 Cal.2d at 466, 426 P.2d at 511, 58 Cal.Rptr. at 111; *see also Oliphant v. Koehler,* 594 F.2d 547 (6th Cir.1979); *Nolan v. State,* 213 Md. 298, 131 A.2d 851 (1957); *State v. Smith,* 271 Or. 294, 532 P.2d 9 (1975); but *see United States v. Riley,* 684 F.2d 542 (8th Cir.1982).

 We conclude that Bernier's acquittal in the Providence County trial was relevant and material evidence that should have been presented to the jury. It is not possible for us to find that its exclusion was harmless error because we do not know what effect knowledge of the acquittal may have had on the jurors' deliberations. Its exclusion denied Bernier due process of law and as a result constituted error of constitutional dimensions. *See Womble v. State,* 8 Md.App. 119, 258 A.2d 786 (1969). Consequently, Bernier is entitled to a new trial.

For the reasons given, the defendant's appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to the Superior Court for a new trial.