STATE

v.

Bennie WOODS, et al.

No. 87–401 C.A.

Supreme Court of Rhode Island.

July 19, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Jane M. McSoley, Asst. Attys. Gen., for plaintiff.

C. Daniel Schrock, Milton Stanzler, Cerilli, McGuirl, Hustwit & Bicki, Providence, for defendants.

## OPINION

FAY, Chief Justice.

This case is an appeal brought by two defendants based on convictions entered by a Superior Court jury pursuant to a multicount indictment. The defendants were charged with violating G.L. 1956 (1981 Reenactment) § 11-1-6 and § 11-26-1 (conspiracy to kidnap and kidnaping); G.L. 1956 (1981 Reenactment) § 11-34-5 as amended by P.L. 1983, ch. 196, § 1 (directing and transporting for purposes of prostitution), and § 11-34-1, as amended by P.L. 1983, ch. 130, § 1 (pandering). A Superior Court jury found defendant Woods guilty of violating §§ 11-34-5 and 11-34-1; and defendant Cole guilty of violating § 11-34-5. We sustain the appeal and hold that the trial justice erred when he prohibited the introduction of evidence of a prior acquittal of another coindicted defendant in Massachusetts relating to charges based on the same operative facts and circumstances involved in this case. We therefore reverse the judgment of conviction and remand this case for a new trial.

Before we discuss the facts of this case and the applicable law on which we base our decision, we shall enumerate the various counts within the indictment in order to identify and outline the relationships of the numerous defendants herein.

In March 1984 a Providence County Grand Jury issued a multicount indictment against several defendants, charging that the following crimes were committed be-

tween February 21, 1984, and March 3, 1984:

COUNT 1: that Joann Chapman, Robert Cole, Vincent H. Woods, and Bennie Woods did agree, combine, confederate, contrive, and conspire together to commit the crime of kidnaping in violation of §§ 11-1-6 and 11-26-1.

COUNT 2: that Joann Chapman and Robert Cole did seize, kidnap, and confine Sherry W to be imprisoned and confined in Rhode Island between February 21, 1984, and March 3, 1984, in violation of § 11-26-1.

COUNT 3: that Joann Chapman, Robert Cole, Bennie Woods, and Jerry Sweat for pecuniary gain did direct and transport Sherry W for the purposes of prostitution and other lewd and indecent acts in violation of § 11-34-5.

COUNT 4: that Joann Chapman, Robert Cole, Bennie Woods, Jerry Sweat, and Jane Doe (later identified as Andreza Skipworth), did by threat and promise, cause and induce Sherry W to become a prostitute and enter upon and lead a wanton and dissolute life in violation of § 11-34-1.[1]

Following the presentation of the state's case in chief, the trial justice granted defendants Cole and Woods's motion for acquittal on count 1 and defendant Cole's motion for acquittal on count 2. On the pandering charge, set forth in count 4, the trial justice granted motions for judgment of acquittal on behalf of defendants Cole, Sweat, and Skipworth.

At the conclusion of the trial the jury found Jerry Sweat not guilty on count 3 (directing and transporting for purposes of prostitution), but it did find defendants Cole and Woods guilty of that charge. Woods was also found guilty of the charge of pandering. We note that defendant Joann Chapman, a Massachusetts resident, was never arrested, arraigned, or brought to trial in Rhode Island. Consequently the only two defendants found guilty of any of the crimes charged were Woods and Cole:

---

1. Sherry W is not the victim's real name. This court in all cases of sexual assault changes the name of the victim to protect his or her identity.

Woods on counts 3 and 4 and Cole on count 3. Both defendants appeal from those convictions.

The particular facts of this case, which led to the multicount indictment and ultimately the prosecution of this case, are as follows.

Sherry W, the alleged victim and the state's complaining witness, lived in Boston, Massachusetts. On February 21, 1984, she attended a party in East Boston with her friend Joyce Brown. The defendant Robert Cole, whom Sherry had previously met, also attended that party.

Approximately eight days later Sherry and a woman named Joann Chapman left that apartment and took a bus to Providence. The witness testified at trial that this trip was completely against her will (as was her eight-day confinement in the East Boston apartment). She also testified that the sole purpose of the trip was to bring her to Providence to have her and Chapman act as strip dancers at the El Tico lounge. Although Sherry never attempted to escape, she testified that she was in constant fear of Chapman, who had previously shown her a switchblade knife and warned her "not to give her any trouble." When they arrived at the El Tico lounge, Chapman directed Sherry to put on one of the dance costumes worn there. The witness stated that she did so for fear that if she did not, Chapman would "take care of her," in accordance with defendant Robert Cole's directions. Sherry also stated that upon finishing her dance, the manager of the lounge, defendant Bennie Woods, ordered her to go into the back room and to have sexual intercourse with a lounge patron. She also stated that Woods told her to charge the patron $70 for the sexual act and to give $20 of it to the bartender, defendant Andreza Skipworth. After she had sexual intercourse with the patron and had given the bartender the $20, defendant Woods asked to see her. Sherry alleged that during this interview, Woods asked her to perform oral sex on him for money and to work for him as a dancer and as a prostitute. Sherry stated that she denied

his requests and acknowledged that at no time did Woods threaten to harm her.

At the end of that evening, after attending a late-night party, Chapman took Sherry to an apartment in the city of Providence to spend the night. The following morning, March 2, 1984, Robert Cole arrived at that apartment. According to Sherry's testimony, he was visibly upset at both Chapman and herself because they had not made enough money the night before. She testified that Cole began to beat both of them while stating that he would send her (Sherry) back out for further dancing that day. Sherry stated that she was later brought back to the El Tico lounge, where under the direction of Bennie Woods she danced on and off until approximately 11:30 p.m. She testified that during her break between dances she was befriended by a man named Jerry Sweat. During her discussions with Sweat she explained to him that she was being held against her will. Sherry testified that Sweat agreed to help her and that after her last dance she made her way to the rear entrance of the lounge where she escaped out the door and into Sweat's awaiting car. From there the two proceeded to Sweat's apartment where they spent the night. The next morning, March 3, 1984, Sweat identified himself as Bennie Woods's son and declared that he assisted her in her escape so that she would work for him as a prostitute. Sherry testified that as she was again frightened for her life, she "played along" with Sweat pretending she was interested in his proposition. She further stated that Sweat began to trust her and eventually left her in the apartment alone; however, she also testified that she was stranded in that apartment for hours because she could not unlock the door and it was impossible for her to jump from the second-floor window. Sherry testified that when the door eventually did open, a man and a woman entered the apartment, and an argument ensued regarding Sherry's presence in the apartment. Sherry then fled down the stairs and across the street where she asked a neighbor to call the Providence police.

As we previously stated, defendants Cole and Woods were the only parties convicted of any crimes charged in the State of Rhode Island. However, Joann Chapman was previously tried and acquitted by a jury in Massachusetts on the charge of kidnaping Sherry W. That charge stemmed from the same chain of events that led to the prosecution of the case at bar. Here defendants Cole and Woods argue that the trial justice erred when he refused to allow evidence of that prior acquittal. The trial justice held that the events that occurred in Massachusetts had relatively little bearing, except for background information, on the case before the Rhode Island Superior Court jury. We disagree with the trial justice and hold that evidence of a prior acquittal on charges emanating from the same chain of events is an issue that relates directly to the credibility of the state's complaining witness. Sherry also testified in the Massachusetts proceeding, and as such this fact relates directly to weight, not the admissibility, of the evidence. Thus we hold that this issue should have been presented before the jury.

The defendants' raise numerous issues in this appeal. The defendants' primarily emphasize that judicial error occurred when the trial justice allowed the prosecutor a peremptory challenge of the final potential black juror after the trial justice had already summarily excused for cause two of the three potential black jurors. The defendants correctly cite the United States Supreme Court case *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which the Court held that a defendant could raise an equal-protection challenge to a prosecutor's use of peremptory challenges that excluded all black members from a petit jury in a case in which the defendant was black. Although the case at bar was tried before *Batson* was decided, *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), required retroactive application of the *Batson* holding. We however, decline to address the issue of whether a single peremptory challenge by the prosecution of the sole remaining potential black juror constituted purposeful discrimination which

would undermine public confidence in the fairness of our system of justice as required by *Batson*, 476 U.S. at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 84. We do so because we remand this case on other grounds: primarily, that the exclusion of evidence of a prior acquittal of a coindicted defendant created sufficient prejudice to deprive defendants of due process of law.

■ This court previously held that admission of evidence of a prior acquittal by a defendant will afford him or her the opportunity to weaken or rebut the prosecution's evidence of other crimes. *State v. Bernier*, 491 A.2d 1000, 1005–06 (R.I.1985). Although the *Bernier* case involved evidence of a prior acquittal within the same sovereignty and related to a sole defendant, we conclude that its reasoning applies to the instant case. Evidence of a prior acquittal of a coindicted defendant (although not present at trial) in another state, when the evidence relates to the identical chain of events and concerns the same individuals, is equally probative of a complaining witness's credibility and thus should be placed before the trier of fact. As this court stated in *Bernier:*

> "[p]ermitting the jurors to hear such evidence will assist them in their assessment of the significance of the evidence of other criminal activity by knowing that at another time and place, a jury, considering defendant's guilt or innocence of another crime reached the conclusion that he or she was not guilty. *People v. Griffin*, 66 Cal.2d [459] at 466, 426 P.2d [507] at 511, 58 Cal.Rptr. [107] at 111 [ (1967) ]; *see also Oliphant v. Koehler*, 594 F.2d 547 (6th Cir.1979); *Nolan v. State*, 213 Md. 298, 131 A.2d 851 (1957)." 491 A.2d at 1006.

■ We therefore conclude that the evidence of Joann Chapman's acquittal on virtually the same charges in Massachusetts was relevant and material evidence that should have been presented to the jury. It would be impossible for us to find that its exclusion was merely harmless error because we cannot calculate how knowledge of the acquittal may have affected the jury's deliberations. *Bernier*, 491 A.2d at

1006. Thus its exclusion denied defendants due process of law and as a result constituted error of constitutional dimensions. *Id.; see Womble v. State,* 8 Md.App. 119, 258 A.2d 786 (1969).

In light of our remanding this case for a new trial, we do not find it necessary to address the numerous other issues raised in the defendants' appeal.

For the reasons heretofore stated, the defendants' appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to the Superior Court for a new trial.