STATE

v.

Robert L. MARQUIS.

No. 89–282–C.A.

Supreme Court of Rhode Island.

April 18, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., John J. Hogan, Sp. Asst. Atty. Gen., for plaintiff.

John A. MacFayden, 3rd, Providence, for defendant.

OPINION

KELLEHER, Justice.

On January 20, 1989, following a two-day trial, a Superior Court jury found the defendant, Robert L. Marquis (Marquis), guilty of simple assault. He received a sentence of one year at the Adult Correctional Institutions with two months to serve, and the remaining ten months were suspended. Marquis now comes before us appealing the Superior Court judgment.

This case arises from the termination of a relationship between Marquis and a woman whom we shall refer to as Edith. Both Marquis and Edith testified that they were students at the University of Rhode Island (URI). Both also testified that from about September 1984 to March 1987 they were involved in an intimate relationship. On one Saturday morning toward the end of March 1987, Marquis went to Edith's dormitory room. When Marquis could not·

find Edith, he suspected that she was dating someone else. Later that day, Marquis again went to Edith's room, and on his departure he took with him all her class notebooks, hoping that this action would cause Edith to contact him.

When Edith returned to her dormitory room, she noticed that her notebooks were missing. After a fruitless search she called Marquis, who admitted to taking the notebooks. Marquis told Edith that he would return the notebooks but added that he wanted to discuss with her the demise of their relationship. Edith agreed to meet with Marquis.

The defendant drove to Edith's dormitory and asked Edith to get into his car. She then entered his car, and they proceeded to drive toward Charlestown, Rhode Island, where Edith's parents owned a summer house. At this point the stories of Edith and of Marquis become markedly different.

When Edith testified, she claimed that when she climbed into Marquis's car, she told him that she wanted to terminate the relationship. Edith then testified that Marquis began hitting her face with his open hand, after which Marquis began to rip pages out of Edith's notebooks and throw them out the car window. Edith also testified that although she tried to stop Marquis from destroying her notebooks, her efforts were in vain.

Marquis admitted that he did tear Edith's notebooks, but he insisted he never physically assaulted Edith. Marquis stated that when Edith lunged at him in order to retrieve her notebooks, he pushed her away in order to maintain control of his vehicle. According to Edith, once she and Marquis arrived at the home in Charlestown, Marquis dangled her off a porch, holding Edith by the ankles over a railing that was ten feet above the ground. Edith also testified that Marquis forced her to engage in sexual activities with him when they returned to the car.

Marquis, on the other hand, denied dangling Edith off the edge of the porch. Furthermore, although he admitted that they engaged in sexual activities, Marquis described them as consensual.

Both Marquis and Edith then drove from Charlestown to Narragansett, where Marquis resided. On the way to Marquis's house, they stopped at a gas station, where Edith agreed to go into the station and buy some cigarettes for Marquis. Upon reaching Marquis's residence, they again engaged in sexual activities. Whereas Edith claimed Marquis demanded that she comply, Marquis once again claimed that Edith consented.

From Narragansett the two then drove to northern Rhode Island. When the car came to a halt alongside Route 146, a police officer drove by, but Edith made no effort to seek assistance from the officer. Near a weigh station on Route 146, Marquis told Edith to "get out of" his car. Edith was fortunate in being able to flag down a passerby who offered her a ride back to URI. The following day she reported the incident to the residence hall coordinator of her dormitory.

On his appeal Marquis raises two issues. Initially he claims that the trial justice erred when he instructed the jury on Marquis's claim of self-defense. In addition Marquis charges that the trial justice erred when he permitted testimony regarding uncharged sexual assaults without allowing evidence that the grand jury had returned a no true bill on all sexual-assault charges. Both of these issues will now be discussed.

At the trial Marquis invoked the doctrine of self-defense. Although Marquis admitted to ripping Edith's notebooks while they were in the car, Marquis claimed that he never hit Edith but rather pushed her away as she lunged toward him in an effort to retrieve her notebooks. The trial justice instructed the jury regarding the defense of self-defense. This instruction merits a full examination:

> "The law of self-defense proclaims that a person who reasonably believes that he is in imminent or immediate danger of harm at the hands of another may defend himself. He does not have to wait for the first blow to land. However, if a defendant strikes first, he may only use such force as is reasonably necessary for

his own protection. The permissible degree of force used in self-defense depends on that which is necessary under all the circumstances to prevent any injury to the person seeking to defend himself. Thus, you may consider the size of the parties, the circumstances of the assault, as well as the relative strength, weaknesses of the parties, and the like. What is reasonable and necessary force to repel an assault is to be determined in light of the time, place and surrounding circumstances.

"Thus, if you believe that Mr. Marquis was in fear of being harmed by the actions of [Edith], then he may use such force that is reasonably necessary to prevent any harm from being inflicted upon him. That degree of force that one might use, however, is limited to what is reasonably necessary under the facts and circumstances at that time."

The trial justice then continued with instructions regarding other matters of concern to the jury.

When the trial justice finished, the state requested an additional instruction on self-defense. It is this instruction that Marquis claims as improper. This instruction, an addendum to the original instructions regarding self-defense, stated:

"As it relates to self-defense, I neglected to indicate earlier, a person is not allowed to use self-defense to defend against a particular criminal charge if he or she was the instigator of the event that caused the striking. So, thus, the state would have to prove beyond a reasonable doubt if you find there was some type of contact, that it was intended to do bodily harm. The state would have to prove also beyond a reasonable doubt that this defendant did not act out of mistake, accident, self-defense or for any other innocent reason."

Marquis objected to this additional instruction.

The question before this court is whether the trial justice committed reversible error when he instructed the jury that "a person is not allowed to use self-defense to defend against a particular criminal charge if he or she was the instigator of the event that caused the striking." The defendant believes that this is an incorrect statement of law regarding self-defense and that the error is reversible.

"We have said that when there is evidence in support of any defense offered by the accused that raises an issue of fact favorable to him, the court should present the issue by an affirmative instruction that fully and fairly declares the law applicable." *State v. D'Amario*, 568 A.2d 1383, 1385 (R.I.1990). The law of self-defense in this state recognizes that the question of whether one has used reasonable force is determined by consideration of the particular circumstances of each case. *Id.* We have stated:

"[O]ne may defend oneself whenever one reasonably believes that he or she is in imminent danger of bodily harm at the hands of another. Such a person, having the fear, need not wait for the other to strike the first blow. However, such a person must use only such force as is reasonably necessary for his own protection. *The permissible degree of force used in defense of oneself varies with the particular set of circumstances in which he or she acts * * *.* It is clear then that the 'very essence of the defense of self-defense is how the defendant perceived the situation at the time of incident in question.' " *State v. Fetzik*, 577 A.2d 990, 993 (R.I.1990) (quoting *State v. D'Amario*, 568 A.2d at 1385).

■ In this matter the trial justice properly instructed the jury of the defense of self-defense. *See State v. D'Amario*, 568 A.2d at 1385. We believe that the instructions, when examined in their entirety, were proper. *See State v. Lamoureux*, 573 A.2d 1176, 1179 (R.I.1990). The trial justice notified the jury that Marquis could have "use[d] such force that is reasonably necessary to prevent any harm from being inflicted upon him." This instruction was sufficient to allow the jury to determine whether Marquis was entitled to the defense of self-defense. In addition the jury could have rejected Marquis's claim of self-defense for a number of reasons. Indeed,

rather than push Edith away, Marquis could have given her back her notebooks or stopped the vehicle. In fact, it could be argued that the reasonable person would have chosen either of these two options rather than push Edith away when she was attempting to regain her notebooks. Thus the jury could have determined that any force used by Marquis was excessive, given the circumstances.

■ Lastly, on cross-examination Marquis admitted to ripping a chain off Edith's neck. As this action constitutes an assault for which Marquis claimed no justification, the jury properly found Marquis guilty of assault. For these reasons we believe that the trial justice did not commit reversible error in giving the additional instruction regarding self-defense to the jury.

Marquis also alleges that the trial justice erred in allowing evidence of uncharged sexual assaults without allowing into evidence that the grand jury had returned a no true bill on these charges.

■ Edith's testimony included a detailed description of two sexual assaults. With respect to the first encounter, Edith testified: "We started walking toward the car. He said that he wanted to have sex with me. He pushed me into the back seat of the car and he asked me to orally copulate him, and he said he wanted to have sex with me. I said no, I didn't want to; and he said—I said 'Don't hurt me,' and he said 'the only way I'll hurt you is if you don't.' " Edith went on to testify, "Well, he pulled down my sweat pants and my underwear, and he told me to loosen my bra and my underwear, my bra and my shirt, which I did, and he pulled down his pants." At this point there was an objection made by Marquis's attorney.

After a bench conference, the trial justice made the following cautionary instruction:

"Now, ladies and gentlemen, I would simply remind you, the charge for which the defendant is before the court is a charge of simple assault. The elements of that crime will be explained to you later. The elements of the crime, briefly, [include] the unlawful attempt by force or violence to do bodily harm to another person.

*"This defendant is not accused, and it's not before you, of any crime of a sexual nature, of rape, or sodomy, or anything of that nature. The only charge for your consideration is a charge of simple assault."* (Emphasis added.) ·

During cross-examination of Edith, the following questions and answers were exchanged:

"Q. When you saw Mr. Marquis after the incident, you agreed to be his friend and to help him adjust; is that what you said on direct testimony?

"A. Yes.

"Q. In spite of that, you went ahead and charged him with raping you, right?

"A. Yes.

"Q. Yes. You even went to a grand jury, didn't you?

"A. Yes.

"Q. And they didn't charge him, did they?

"Objection [by the state].

"A. No.

"Objection; move to strike [by the state]."

The court granted the state's motion to strike and instructed the jury to disregard both the question and the answer.

Marquis argues that the trial justice erred in not allowing the grand jury's return of a no true bill on the charge of sexual assault into evidence. We have never addressed the question of whether evidence of a no true bill should be allowed in a subsequent criminal trial involving the same defendant. The defendant urges us to expand the doctrine we enunciated in *State v. Bernier,* 491 A.2d 1000 (R.I.1985), and *State v. Woods,* 544 A.2d 141 (R.I. 1988).

In *Bernier* we stated that when a defendant is acquitted of a crime other than the one with which he or she is charged, the trial court must allow into evidence the acquittal. 491 A.2d at 1005. Three years later, in *Woods,* we expanded the rule set

forth in *Bernier* to allow into evidence the acquittal of a coindicted defendant in another jurisdiction, even though this coindicted defendant was not present at trial. 544 A.2d at 144.

Marquis now argues that the facts of this matter merit yet another expansion of the *Bernier* rule; namely, that evidence of the grand jury returning a no true bill with respect to the sexual assault is admissible to counter Edith's detailed testimony of the sexual assaults. Even though Marquis's argument has some logical appeal, we refuse to extend the rule in *Woods* and *Bernier* to the facts of this controversy. We believe that the trial justice's curative instruction remedied any prejudice created by Edith's testimony. As noted earlier, the trial justice apprised the jury of the fact that "the defendant [was] not accused and it [was not] before [the jury], of any crime of a sexual nature, of rape, or sodomy, or anything of that nature." As we believe that there was no prejudice to Marquis, we refuse to extend the rule of *Bernier* and *Woods* to allow into evidence a grand jury's return of a no true bill in a related matter.

The defendant's appeal is denied and dismissed. The judgment of conviction is affirmed.