**STATE**

v.

**James M. TOBIN, Jr.**

**No. 90–15–C.A.**

Supreme Court of Rhode Island.

Jan. 22, 1992.

James E. O'Neil, Atty. Gen., Annie Goldberg, Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

John Macfayden, 3rd, Peter A. DiBiase, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter is before the Supreme Court on appeal by the defendant, James M. Tobin, Jr. (Tobin), from his conviction in the Providence County Superior Court. Tobin was found guilty of second-degree sexual assault, G.L.1956 (1981 Reenactment) § 11–

37–4, as amended by P.L.1984, ch. 59, § 1. He was sentenced to twelve years imprisonment, all of which were suspended.

On September 9, 1986, a grand jury sitting in Providence County returned indictment No. P1/86–2351B against defendant, James M. Tobin, Jr., and indictment No. P1/86–2351A against defendant's son, Dennis, alleging five counts of unlawful sexual contact with defendant's niece, hereinafter known by the fictitious name Jill. The cases were severed prior to trial, and defendant proceeded on two counts of the five-count indictment. One count charged first-degree sexual assault in violation of G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1981, ch. 119, § 1, allegedly committed on Christmas Eve in 1981; the other charged second-degree sexual assault in violation of § 11–37–4, allegedly committed in May 1984. Pretrial motions were argued commencing March 2, 1989, and trial concluded March 14, 1989. On March 15, 1989, the jury returned verdicts of not guilty on the count charging first-degree sexual assault, and guilty on the count charging second-degree sexual assault. The defendant's motion for a new trial was denied. We sustain the defendant's appeal and remand the case for a new trial.

Immediately preceeding trial the state notified defense counsel that it would attempt to introduce no fewer than five additional uncharged sexual incidents allegedly involving defendant and the complaining witness. The defense pressed a motion in limine to preclude the state from introducing under Rule 404(b) of the Rhode Island Rules of Evidence the five alleged acts of prior uncharged misconduct. After extensive argument, the trial court granted the motion in part by excluding evidence of three of the incidents. The trial justice allowed the state to introduce into evidence two of those incidents, one of which forms the basis for defendant's argument involving the no true bill.

Additionally the defense filed motions attacking the constitutionality of the second-degree sexual-assault statutes, § 11–37–1 and § 11–37–4 including, inter alia, an argument that the statutes, if literally applied, would allow conviction without a criminal mens rea. Again after extensive argument these motions were denied.

During the state's case in chief the complaining witness, Jill, unexpectedly described an additional incident (hereinafter the surprise incident), also allegedly occurring on Christmas Eve 1981 but prior in time to the incident which forms the basis for the count of first-degree sexual assault. This incident was neither charged in the indictment, nor specified as uncharged misconduct which the state would attempt to introduce under Rule 404(b). The trial justice denied defense counsel's motion to pass the case and his subsequent request for a curative instruction in relation to this testimony.

The evidence presented at trial covers a series of sexual assaults. The first incident testified to by Jill forms the basis for the charge of second-degree sexual assault. Jill testified that in May 1984, when she was thirteen years old, she went to defendant's home in Burrillville, where, because her parents were in the process of moving, she and her brother, hereinafter known by the fictitious name John, spent the night at defendant's home. Jill stated that at approximately 7 p.m. she was in the kitchen and her aunt, defendant's wife, and John were upstairs. Jill testified that defendant entered the kitchen and "cornered" her, after which defendant placed her hand on his penis on top of his clothes and placed his hand on her vagina outside her clothes. Jill testified that because she was "pretty much in a state of shock," she said nothing to defendant during this incident; and that defendant told her that she "liked this" and that she "wanted it." Jill stated that she did not relate the story of this incident to anyone that night or the next day because she was afraid and confused, and she felt as though what happened had been her fault.

The second incident testified to by Jill forms the basis for the charge of first-degree sexual assault. Jill stated that earlier, on Christmas Eve of 1981, when she was eleven years old, she was in the com-

pany of defendant at her grandmother's house in Johnston, along with her immediate family and several other relatives. Jill testified that while she was playing on the front staircase of her grandmother's house, defendant came down the stairs and approached her. Jill stated that the defendant put his hand down her pants, "both [her] jeans and underwear," and engaged in digital penetration. Jill stated that she felt pressure and pain, and that because she was "in shock" she did not say anything to defendant. The defendant told Jill during this incident too that she "wanted this" and that she "liked it." Jill then stated that defendant left abruptly, she believed because someone approached the vicinity of the staircase. Jill explained that because she was scared and confused, she did not inform her parents of this incident.

In the course of describing the incident which occurred on Christmas Eve of 1981, the state elicited from Jill testimony relating to a third incident, the surprise incident. As previously noted, this incident also allegedly occurred on Christmas Eve of 1981, but earlier in the evening than the forementioned incident. Jill testified that defendant had her on his knee with his arms closely around her. Jill stated that defendant's hand "went down to my buttocks area and brushed my vagina area on my clothing." In response to this testimony defense counsel objected and later moved to pass the case on the ground that the state had failed to mention the incident in response to its discovery request pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure. Defense Counsel further argued that the evidence was inadmissible under Rule 404(b). That motion was denied. The defense counsel requested that the trial justice give a limiting instruction on this surprise incident, identical to that given for the testimony described below, explaining to the jury the limited purpose for which the evidence is offered. Rule 404(b). That request was also denied.

Jill further testified to two other incidents of sexual assault involving defendant. The trial justice allowed this testimony pursuant to Rule 404(b). The first of these additional incidents occurred in December 1976, when Jill was six years old. After a trip to a local shopping mall with defendant, her mother and two brothers, Jill went with defendant to his home, having planned to spend the night there. When defendant and Jill first arrived at the house in the early afternoon, no one else was home. Shortly thereafter defendant's fourteen-year-old son, Dennis, arrived home from school. In the course of the afternoon defendant suggested that the three of them engage in a game of strip poker.

Jill did not know how to play strip poker and so, she testified, defendant and Dennis tried to teach her. Jill stated that the card game was just a ploy and that defendant and Dennis "made [her] take off her clothes." Jill explained that as she lay naked on Dennis's bed, defendant began coaching and "egging" his son on to engage in vaginal intercourse with her. While Dennis was attempting to perform this act, Jill began crying because it caused her pain. Dennis then abandoned his attempts and told Jill to get dressed. Jill stated that she did not tell her aunt, defendant's wife, when she later arrived home because she was afraid and confused. Jill testified that although she was scheduled to spend the night with defendant and his wife and, in fact, went to sleep in their bed with them, she woke up crying and asked to go home. The defendant then drove Jill home.

Jill testified to another incident of sexual assault involving defendant. On Christmas Day 1985 defendant and Dennis were visiting Jill's family. Jill stated that she was wearing a dress that "tied in the back." She testified that defendant and Dennis repeatedly untied her dress and pinched her buttocks. Jill explained that other family members were in the area and that they seemed to view this conduct as "horseplay." Jill, however, became very upset by this conduct and in fact changed her clothes in the middle of the day to discourage defendant's advances.

Following the description of these two incidents, the trial justice instructed the

jury on the limited use of Rule 404(b) evidence. The trial justice, however, refused to inform the jury that the 1985 incident occurring on Christmas Day, untying the dress and pinching Jill's buttocks, was an incident to which the grand jury had returned a no true bill. The trial justice also ruled that defense counsel was not allowed to bring to the attention of the jury, via cross-examination or other testimony, the grand jury's refusal to return an indictment on the 1985 incident. Defense counsel's request for a stipulation from the state about the no true bill was also denied.

On appeal Tobin essentially raises four issues, only three of which merit our consideration: (1) the trial justice erred in allowing into evidence three separate incidents of uncharged misconduct, (2) the trial justice erred in refusing to inform the petit jury of the grand jury's return of a no true bill on a 1985 incident, and (3) the trial justice erred in failing to instruct the jury that second-degree sexual assault required proof that defendant's contact was for the purpose of his own sexual gratification, and that absent such instruction, § 11–37–1 and § 11–37–4 are unconstitutional.

I

EVIDENCE OF PRIOR ACTS
OF SEXUAL ASSAULT

 It is a well-settled rule that evidence of other acts is not admissible solely to prove a defendant's criminal disposition. *See State v. Woodson,* 551 A.2d 1187, 1193 (R.I.1988); *State v. Pignolet,* 465 A.2d 176, 179 (R.I.1983); *State v. Jalette,* 119 R.I. 614, 624, 382 A.2d 526, 531 (1978); *State v. Colangelo,* 55 R.I. 170, 173, 179 A. 147, 149 (1935). However, this court has recognized certain exceptions to that rule. Evidence of other acts may be admissible if related to the charged conduct in a way that tends to establish "guilty knowledge, intent, motive, design, plan, scheme, system, or the like." *Woodson,* 551 A.2d at 1193 (quoting *State v. Beaulieu,* 116 R.I. 575, 579, 359 A.2d 689, 691 (1976)). In cases involving sexual assault, this court expanded that list of exceptions to allow evidence of prior acts to show the defendant's "lewd disposi-

tion or * * * intent." *State v. Bernier,* 491 A.2d 1000, 1004 (R.I.1985) (quoting *Jalette,* 119 R.I. at 627, 382 A.2d at 533). "Indeed, except when used purely to show a criminal predisposition, relevant evidence should not be excluded simply because it reveals the commission of an offense other than the one charged." *Woodson,* 551 A.2d at 1193 (citing *People v. Kelley,* 66 Cal.2d 232, 424 P.2d 947, 57 Cal.Rptr. 363 (1967), as adopted by *Jalette,* 119 R.I. at 627, 382 A.2d at 533).

The defendant contends that the "lewd disposition or intent" exception for prior sexual misconduct first enunciated in *Jalette* is at odds with the general prohibition against the use of prior-acts evidence to establish defendant's criminal disposition and, more specifically, that *Jalette* and its progeny have been overruled by Rhode Island's adoption in 1987 of the Rhode Island Rules of Evidence. The defendant correctly points out that the Rhode Island Rules of Evidence were intended by the drafters to track the Federal Rules of Evidence and that the rules utilize, in most instances, identical language. The defendant also states that federal jurisprudence has never recognized an exception for "lewd disposition" or the like similar to that created in *Jalette.* The defendant fails to note, however, that because of the nature of the offense, sexual-assault cases are rarely prosecuted in federal courts. *See* Weinstein & Berger, *Weinstein's Evidence* ¶ 404[11] at 404–83 (1989). Federal case law interpretating Fed.R.Evid. 404(b) in sexual-assault cases is relatively sparse compared to that in state courts. *Id.* A survey of other state jurisdictions reveals that there is in fact a strong line of authority, despite the enactment of the Federal Rules of Evidence, recognizing a special exception for evidence of a defendant's disposition to commit sexual offenses. *See* Imwinkelried, *Uncharged Misconduct Evidence* § 4:18 at 50 (1984); *see also* Weinstein & Berger, *Weinstein's Evidence* ¶ 404[11] at 404–83.

In *Getz v. State,* 538 A.2d 726 (Del.1988), the Delaware Supreme Court engaged in an extensive analysis of the admissibility-

of-other-acts evidence in sexual-assault cases. The court stated:

"A survey of other jurisdictions reveals that evidence of uncharged sexual misconduct has been admitted under two general, but sometimes overlapping, categories. The first consists of evidence which is admitted pursuant to one of the enumerated purposes found in * * * 404(b). The most common of these purposes is the defendant's common plan or scheme to engage in sexual misconduct with the same victim or others of similar age or circumstances. * * * Other purposes for which evidence of uncharged sexual misconduct is offered include defendant's intent * * * or motive to commit the charged crime.

"The second category * * * consists of evidence which is admitted under a lustful disposition or sexual propensity exception to * * * 404(b)'s general prohibition barring use of evidence for such purposes. This exception is almost universally recognized in cases involving proof of prior incestuous relations between the defendant and the complaining victim." *Id.* at 732.

Rhode Island case law clearly falls into the second category of cases described by the Delaware Supreme Court. Although we recognize that our position has been subject to provocative critical comment,[1] we decline to abandon that position. In *Jalette* we stated that "[w]e are extremely conscious that the indiscriminate use of 'other crimes' evidence poses a substantial risk to an accused's right to a fair trial." *Jalette*, 119 R.I. at 627, 382 A.2d at 533. We further warned that such evidence should be "sparingly used by the prosecution and only when reasonably necessary." *Id.* We advised the trial court to exclude such evidence if it is purely cumulative and reiterated the importance of the relevancy of the evidence in relation to the crime charged. *Id.* We discussed further the cautious manner in which this evidence should be presented to the jury and the judge's role in striking a proper balance

between the compelling interests of both prosecutor and defendant. *Id.* at 628, 382 A.2d at 533–34. If the safeguards so carefully enunciated in our *Jalette* decision are strictly followed by trial justices, as we believe they have been thus far, we feel that a defendant will have his "guilt or innocence determined by an impartial jury, free from the disruptive influences which accompany irrelevant, prejudicial, and extraneous evidence." *Id.* at 628, 382 A.2d at 534.

## II

### NO TRUE BILL

 The defendant also contends that, notwithstanding the admissibility of the 1985 incident (untying of dress and pinching of buttocks) under Rule 404(b), the trial justice committed reversible error in refusing to inform the petit jury of the return of the no true bill by the grand jury on that incident. We agree.

In *State v. Bernier*, 491 A.2d 1000 (R.I. 1985), this court held that prior to the introduction of evidence of a crime other than the one charged, and on which defendant has already been tried and acquitted, the trial court must "allow evidence of the acquittal either by stipulation, by the parties' testimony, or by an instruction from the trial justice." *Id.* at 1005. We reasoned that "admission of evidence of a prior acquittal by a defendant will afford him or her the opportunity to weaken or rebut the prosecution's evidence of other crimes." *State v. Woods*, 544 A.2d 141, 144 (R.I.1988) (citing *Bernier*, 491 A.2d at 1005–06). Evidence of a prior acquittal, when the evidence relates to the charged crimes, is highly probative of the complaining witness's credibility and thus should be presented to the jury. *Woods*, 544 A.2d at 144. In *Bernier* we stated:

"Permitting the jurors to hear such evidence will assist them in their assessment of the significance of the evidence of other criminal activity by knowing

---

1. See *State v. Jalette*, 119 R.I. 614, 626, 382 A.2d 526, 533 (1978), for a discussion of concerns and criticisms of this exception.

that at another time and place, a jury, considering defendant's guilt or innocence of another crime, reached the conclusion that he or she was not guilty." 491 A.2d at 1006 (citing *People v. Griffin*, 66 Cal.2d 459, 466, 426 P.2d 507, 511, 58 Cal.Rptr. 107, 111).

In *State v. Marquis*, 588 A.2d 1053 (R.I. 1991), this court was asked to expand this doctrine to include evidence of a no true bill. In *Marquis* we declined to do so. That decision, however, was based solely on the facts of that case. There the defendant was charged with simple assault. During trial a witness testified to two prior sexual assaults involving the defendant. *Id.* at 1056. After defense counsel's objection and a bench conference, the trial justice gave the jury a cautionary instruction. *Id.* The trial justice explained to the jury that the defendant was charged only with simple assault and briefly outlined the elements of that crime. *Id.* The trial justice made it extremely clear to the jury that the defendant was not charged with any crime of a sexual nature. *Id.* The trial justice again reminded the jurors that the only charge under their consideration was the charge of simple assault. *Id.* On cross-examination the defense counsel attempted to elicit testimony from the witness concerning the return of a no true bill by the grand jury on the subsequent charge of rape. *Id.* The trial justice granted the state's motion to strike that testimony and instructed the jury to disregard that portion of the testimony, thereby precluding the jury from considering evidence of the no true bill. *Id.*

As previously stated, in *Marquis* we refused to expand the *Bernier* doctrine to the facts of that case. We believe, however, that the facts of the case at bar warrant such expansion. The critical distinction between *Marquis* and the present case is that in *Marquis* the evidence of prior sexual assault involved crimes wholly distinguishable from the crime charged. The risk of prejudice was surely not as great as it would have been if the crimes charged, and those presented to the jury under Rule 404(b) were indistinguishable, as is the situation in the instant case. Furthermore,

however slight the prejudice that may have existed in *Marquis* was, we concluded that it was adequately remedied by the trial justice's curative instruction.

We are faced with an entirely different scenario in the present case. The jury was presented with evidence of five incidents of sexual assault: two charged under the indictment and three allowed in as Rule 404(b) evidence. The risk of prejudice created by this array of testimony is much greater than that posed in *Marquis*. In *Jalette* we cautioned the trial justice on the use of "other crimes" evidence, warning specifically of the cumulative effect of such evidence. *Jalette*, 119 R.I. at 627, 382 A.2d at 533. Because of the high probability of prejudice in the case at bar, specifically the cumulative effect of the evidence, we believe that the jury should have been apprised of the no true bill "either by stipulation, by the parties' testimony, or by an instruction from the trial justice." *Bernier*, 491 A.2d at 1005. The defense counsel would then not only have had the opportunity to attack the credibility of the evidence that was previously deemed insufficient to support an indictment but also have further been able to distinguish for the jury that evidence which was charged and that which was uncharged. This action would certainly have alleviated the cumulative effect of the evidence and the resulting prejudice to defendant.

█ We conclude that the grand jury's return of the no true bill was relevant and material and should have been presented to the jury. We cannot hold that its exclusion was harmless error because it is not possible to determine what effect knowledge of the no true bill may have had on the jurors' deliberations. *Bernier*, 491 A.2d at 1006. We conclude that "[i]ts exclusion denied [the defendant] due process of law and as a result constituted error of constitutional dimensions." *Id.* (citing *Womble v. State*, 8 Md.App. 119, 258 A.2d 786 (1969)). Consequently defendant is entitled to a new trial.

The defendant further contends that the trial justice committed reversible error in

failing to give the jury a limiting instruction on the 1981 surprise incident. Because this case is remanded for a new trial on other issues, we do not find it necessary to address that issue.

## III

## CONSTITUTIONALITY OF SEXUAL-ASSAULT STATUTE

The defendant also contends that the second-degree sexual-assault statutes, G.L. 1956 (1981 Reenactment) § 11–37–1, as amended by P.L.1984, ch. 152, § 1 and § 11–37–4, as amended by P.L.1984, ch. 59, § 1, if read literally, cause substantial constitutional problems because together they predicate a finding of unlawful sexual contact not on what defendant actually intended but on what some other person, either the complainant or the jury, could reasonably believe that he intended. We agree.

■ Section 11–37–4 states that "[a] person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person * * *." Section 11–37–1 defines "[s]exual contact" as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification or assault." A literal reading of this statute, without more, allows criminal liability without proof of mens rea. The question of whether defendant intended the touching to result in his sexual arousal or the like is never considered by the trier of fact.

"The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137, 1147 (1951). In *Morissette v. United States*, 342 U.S. 246, 250–51, 72 S.Ct. 240, 243, 96 L.Ed. 288, 293–94 (1952), the Court stated:

> "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in

mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution."

The *Morissette* Court noted that this notion is so deeply rooted in American law that as the states codified their common-law crimes, even if the enactments were silent on intent, courts assumed that the omission was not indicative of disapproval of the notion but "merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation." *Id.* at 252, 72 S.Ct. at 244, 96 L.Ed. at 294. The Court recognized an exception to this rule which has evolved over time. That exception, however, deals only with regulatory offenses or public-welfare offenses and is not, therefore, relevant for purposes of this analysis.

In addition the United States Supreme Court has stated that the "constitutionality of a vague statutory standard is closely related to whether the standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596, 609 (1979). In *Colautti* the Court struck down a statute devoid of a mens rea requirement, stating that it "[was] little more than 'a trap for those who act in good faith.'" *Id.* at 395, 99 S.Ct. at 685, 58 L.Ed.2d at 609 (quoting *United States v. Ragen*, 314 U.S. 513, 524, 62 S.Ct. 374, 379, 86 L.Ed. 383, 391 (1942)).

This court has previously held that when the requisite intent is omitted from a criminal offense, such intent should be explicated in an instruction. *State v. Lima*, 546 A.2d 770, 772 (R.I.1988) (citing *Marcinski v. United States*, 479 A.2d 856, 861 (D.C.App.1984), *cert. denied*, 469 U.S. 1224, 105 S.Ct. 1216, 84 L.Ed.2d 357 (1985)). In

*Lima* we found reversible error when the trial justice failed to instruct the jury that in order to find defendant guilty, the jury was required to find beyond a reasonable doubt that defendant intentionally caused the victim harm. *Lima*, 546 A.2d at 772. Although in Lima we were dealing with a child-abuse statute, we deem such reasoning to be appropriate in the instant case.

Thus we conclude that the trial justice committed reversible error in refusing to instruct the jurors that they were required to find beyond a reasonable doubt that the defendant's contact with his niece was for the purpose of the defendant's sexual arousal, gratification, or assault, in order to convict under § 11–37–1 and § 11–37–4, the second-degree sexual-assault statutes. Absent such instruction the jury may have convicted defendant because he simply touched his niece, without finding that his intention in touching was to arouse himself or to gratify himself sexually. *Lima*, 546 A.2d at 772. Thus upon retrial we direct the trial justice to instruct the jury in accordance with the standard set forth above. Such instruction will protect the defendant from a conviction predicated upon an act devoid of mens rea as well as protecting a class of defenseless victims from abuse. *Id.*

For the reasons stated, the defendant's appeal is sustained, the judgment of conviction appealed from is vacated, and the case is remanded to the Superior Court for a new trial.