DECISION
The State of Rhode Island charged Shawn Redden (Defendant) with violations of R.I.G.L. § 21-28-4.01(A)(2)(a), possession with intent to deliver a controlled substance; R.I.G.L § 11-47-5, possession of arms by person convicted of a crime of violence; and R.I.G.L § 11-47-8, carrying a pistol without a license. These charges arose on March 28, 1999 when police stopped Defendant for a traffic violation, searched the car he was driving, and discovered forty (40) bags of marijuana, a fully loaded 9mm handgun and an extra loaded clip containing 9mm rounds. Defendant filed a motion to suppress these items, as well as his subsequent statements to police, arguing that the search violated the Fourth Amendment of the United States Constitution and Article I, section 6 of the Rhode Island Constitution and that the statements were a direct result of that illegal search.
 FACTS AND TRAVEL
On March 28, 1999, State Police Troopers Todd Neill and Michael Brouillette were traveling southbound on Interstate 95 near Exeter, Rhode Island, when they observed in their rearview mirror a vehicle traveling with a broken headlight. The troopers activated their emergency lights and the driver pulled over. Neill approached the driver's side and asked Defendant, who was driving the vehicle, to step out of the car and walk to the rear of the vehicle. As Defendant did so, Neill said he smelled burnt marijuana and observed a small plastic bag on the driver's side floor of the vehicle. He retrieved the bag and then noticed what appeared to be marijuana residue inside the bag. Neill then proceeded to pat down Defendant and felt a large bulge. Upon inquiring about the bulge, Defendant explained he and the other vehicle occupants were headed to a casino and that he had earned the money at a concert earlier in the evening. Apparently, he was not questioned on this fact.
After the pat-down, Neill asked for identification and instructed Defendant to return to the car. Brouillete requested identification from each passenger as well. The troopers returned to their cruiser and issued a citation for the headlight. They then decided to run a background check on every passenger in the vehicle despite determining that each and every license, as well as the vehicle registration, was in order. Upon doing so, the troopers learned that Defendant had been arrested and convicted on previous weapons charges in Massachusetts.
The troopers returned to the vehicle and ordered out all the occupants. Neill then walked around the car shining his flashlight into the interior and asked who owned the bags in the hatch. It is unclear the precise responses that were received, but it seems as though none of the occupants was able to see the bags to which Neill was referring. Upon receiving no definitive response, Neill ordered Ms. Santos (Santos), the owner of the vehicle, to open the hatch. Neill started rummaging through the trunk, removing an electric screwdriver, an electric drill, shoes, toys, and a black bag from which he removed two other bright blue bags, one of which held a total of forty (40) individual packets of marijuana. Upon seeing this, Neill said to Brouillette, "I found something, cuff him." Brouillette then arrested Defendant and put him in the police cruiser. The troopers then called for back-up, and two more officers arrived a short while later. During this time and for a period of almost forty-five minutes, the troopers continued searching the vehicle. Neill searched the trunk thoroughly. He pulled out every bag, dug through every crevice in the car, removed the air filter under the hood, and even unscrewed panels in the car interior looking for contraband. Eventually his quest was successful-he found a live 9mm clip in another bag in the trunk and a fully loaded 9mm handgun under a front seat.
The rest of the passengers were then arrested and police brought all four individuals to the West Greenwich Police Barracks. Miranda warnings were not administered until after arrival at the station. Once at the police station but before being mirandized, Defendant told Neill he did not want to give a statement. He was then told that if he refused to give a statement, the police were going to have to charge Santos with possession of the gun. It was at that point that Defendant agreed to give a written statement admitting ownership of the marijuana, the gun and the ammunition.
The Defendant filed a motion to suppress both tangible evidence (the forty bags of marijuana, gun clip and loaded gun) and statements made to police. The Court took testimony on the motions on May 17, 2001 and December 17, 2001.
 STANDARD OF REVIEW
This motion is brought by Defendant pursuant to Super. R.Crim.P. 41(f). At a suppression hearing, the State is required to prove by a "fair preponderance" that the evidence it offers is admissible. State v.Tavarez, 572 A.2d 276 (R.I. 1990).
 THE ARGUMENTS
Defendant argues that the search of the car was unlawful under Article I section 6 of the Rhode Island Constitution and the Fourth Amendment of the United State Constitution. Specifically, Defendant argues that the search was conducted without probable cause and without consent. Additionally, Defendant argues that his statements to police were made as a result of that illegal search and should be suppressed.
The State argues several points in opposition to the motion to suppress tangible evidence. First, the State argues that the contraband allegedly found on the driver's side floor of the vehicle was seized under the plain-view exception to the warrant requirement and that as a result of that seizure, the police were justified in searching the rest of the vehicle for contraband. In the alternative, the State argues that a search of the vehicle's interior would have been justified as an extension of the Terry pat down. The State then seems to propose the argument that finding the narcotics on the floor gave the police probable cause to arrest Defendant, and that this probable cause to arrest gave them a right to search the entire vehicle incident to arrest. Lastly, the State argues that the police did not need a warrant in this case because they had consent from Santos to search the car. With respect to the statements made by Defendant, the State argues that all statements were made in either a non-custodial setting or while the defendant was in custody but after he had waived his Miranda rights.
 MARIJUANA IN THE HATCH
It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Walker, 667 A.2d 1242, 1246 (R.I. 1995). In order for this Court to uphold the police search that revealed the bags of marijuana in the back of the hatch, this Court must find that one of those exceptions applies to this case.
 The Automobile Exception
Police may conduct a warrantless vehicle search pursuant to the "automobile exception" to the warrant requirement. This exception allows police to search containers in an automobile without a warrant when they have probable cause to believe it holds contraband or evidence of a crime. California v. Acevedo, 500 U.S. 565; 111 S.Ct. 1982; 114 L.Ed.2d 619 (1991); State v. Werner, 615 A.2d 1010, 1013 (R.I. 1992) In the case at hand, no such probable cause existed. When Neill was asked on cross-examination whether he knew what was in the bags in the back of the trunk before he decided to search them, he stated "I had no idea, but I had a pretty good idea." (Tr. of 5/17/02 at 36) On another occasion Neill testified he wanted to search the car based on the "totality of the circumstances." (Tr. of 5/17/02 at 31) These statements do not articulate any specific reason for the police to believe evidence of any crime or contraband was located in the hatch of the vehicle. The police were clearly suspicious, but the law distinguishes mere suspicion and probable cause. See e.g., Beck v. Ohio, 379 U.S. 89 (probable cause necessary to arrest); See also, Terry v. Ohio, 392 U.S. 1 (1968) (reasonable suspicion necessary to stop and frisk). Based on the trooper's own testimony and the evidence introduced during the suppression hearing, this Court finds that no probable cause existed to search the areas of the car in which the forty bags of marijuana were located. As such, the automobile exception cannot be invoked to justify the search of the car.
 Search of the Car as an Extension of a Terry Pat-Down
The State further argues that Neill was justified in searching the vehicle as an extension of his Terry pat-down of Defendant. It is undisputed that Neill had authority to order Defendant out of the vehicle and to pat him down for weapons. State v. Collodo, 661 A.2d 62 (R.I. 1995) (ordering occupants of a lawfully stopped vehicle out of car and patting down outer garments to determine if they are armed is constitutionally permissible). However, this Terry-type pat-down search may be extended to the passenger compartment of the vehicle in which the defendant is an occupant only if "the police officer possesses a reasonable belief based on `specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long,463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481; 77 L.Ed.2d 1201, 1220 (1983);State v. Milette, 727 A.2d 1236, 1239 (R.I. 1999) ("an officer may conduct a limited search of the automobile for weapons where the officer has an articulable suspicion to believe that the suspect may be armed and dangerous"). In the case at hand, Neill conducted a lawful Terry pat-down and found nothing but money. He then told Defendant to return to the vehicle. If Neill or Brouillette had any reason to suspect weapons were present in the vehicle, it is safe to say they would not have permitted Defendant to return. Allowing him to do so convinces this Court that at the time Neill took the registration and license information from the occupants of the vehicle and returned to his own cruiser, he had no "specific and articulable facts" upon which to base any suspicion that Defendant was armed and dangerous, and he did not have any reason to suspect that he may have immediate access to weapons.
The question next becomes whether the articulable facts necessary to warrant a search for weapons arose after police ran a records check and realized Defendant had prior felony weapons charges in Massachusetts. Knowledge of a suspect's criminal history, when combined with other factors, may sometimes create the necessary justification to believe a particular suspect is armed and dangerous. United States v. Cook,277 F.3d 82 (1st Cir. 2002). In Cook, the First Circuit upheld a vehicle search for weapons when the officers encountered the defendant apparently conducting a drug transaction in a high crime area at one-thirty in the morning. The searching officer in that case knew the defendant was a member of a gang notorious for drug trafficking and violence, that he had a history of drug trafficking and violent crimes and had committed at least one firearms offense. Additionally, the officers in that case testified that the defendant appeared "alarmed" when he saw them and moved around in his seat as if to conceal something. Based on these factors, the court determined that the officers in that case were justified in believing the defendant was armed and thus were justified in conducting a limited vehicle search for weapons.
The instant facts are not analogous to those of Cook. According to Neill's own testimony on cross examination, he wanted to search the car based on the totality of Defendant's criminal history, the marijuana on the floor, and the fact of "no one knowing in the car who owned the bags."[1] (Tr. of 5/17/02 at 32) This "totality" relied on by Neill does not articulate any specific facts supporting a belief that weapons were in the vehicle. Neither Neill nor Brouillette ever said he suspected weapons in the car or that he believed defendant posed a threat to his safety. Neither observed a crime in the making. Neither trooper ever testified to witnessing any suggestive or furtive movements. Neither had any other information about the defendant with the exception of his criminal record. In Cook, the suspect's criminal history was just one of many much more specific factors that blended together to justify the protective sweep of the vehicle. Even combining the other two facts relied on by Neill in wanting to search the vehicle, the evidence in the instant case under the "totality of circumstances" review of Cook does not justify such a protective search.
 Search Incident to Arrest
The third exception for allowing police to conduct a warrantless search of a vehicle is a search incident to arrest. The State does not argue that the search of the hatch was conducted after Defendant was arrested. Rather, the State argues that police had probable cause to arrest Defendant when they found marijuana on the floor and therefore could search the car incident to that probable cause, notwithstanding their choice not to arrest him. This Court finds this attempted search is an unwarranted extension of the search incident to arrest exception.
The search incident to arrest was first announced in Chimel v. UnitedStates, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and was extended to include all interiors of an arrested occupant's vehicle. NewYork v. Belton, 453 U.S. 454, 101 S.Ct. 2860; 69 L.Ed.2d 768 (1981). In this case, no such arrest occurred prior to the search of the vehicle. Trooper Neill had probable cause to arrest Defendant after finding the small bag of marijuana on the floor but he chose not to do so. In his own words, he (Neill) "was going to give him a break." (Tr. of 5/17/02 at 35) When the police decide not to arrest, they make that decision based upon their experience in the field and the necessity of arrest in the current situation they are witnessing. After making that decision, however, they cannot act as if they did arrest by conducting what amounts to a search so broad in scope that it mirrors the boundaries of a search incident to arrest. This exception to the warrant requirement is called a search incident to arrest, not a search incident to probable-cause-to-arrest. This Court cannot allow police to bootstrap their justification to search on an arrest they never intended to initiate in the first place. As such, the search cannot be upheld under this exception.
 Consent to Search
Another of the specifically established exceptions to the search warrant requirement is a search conducted pursuant to consent.Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). When consent to search is challenged by the defendant, the State must prove by clear and convincing evidence that the consent was given freely and voluntarily. State v. Leavitte, 237 A.2d 309, 318, cert. denied, 393 U.S. 881 (1968). The State argues that the troopers conducted their search pursuant to consent given by Santos, the owner of the vehicle. Twice in his testimony, Neill stated that Santos told him he could search. On one of those occasions, Santos is alleged to have said, "Go ahead, I have nothing to hide." (Tr. of 5/17/02 at 11) However, Neill later testified that all the occupants of the car "appeared very nervous" at the time of the stop. (Tr. of 5/17/02 at 49) If Santos was in fact "very nervous," it is hard for this Court to believe she would have been so forward in granting permission for the police to search her vehicle. Ms. Santos in fact denies ever giving such permission. She even questioned them as to why they were searching her car when they had been stopped for a broken headlight.
In a case with such divergent testimony, it is this Court's job to make credibility determinations. The Court understands that the police have a very difficult job. They see and experience so many different situations every day that it is impossible to remember all the details of each stop they encounter. On the other hand, when something as traumatic as a full-blown search and arrest happens to a young mother who has never been arrested, she is bound to remember the details very well. Both Santos and the Defendant deny giving consent. If the police wanted to make sure they had lawful consent they could have asked Santos to fill out a request-to-search form, which the police had in their cruiser. In addition, in his police report about the events of the evening, Brouillette never mentioned permission or consent given by any passenger. Based on the evidence before it, this Court finds that no consent was given to search this car. Therefore, the search of the car cannot be upheld under this exception.
Summarizing the foregoing analyses, this Court finds that since the police had no warrant to search the vehicle and no exception to the warrant requirement justifies the search, the police violated Defendant's rights under the Fourth Amendment of the United States Constitution and Article I Section 6 of the Rhode Island Constitution. The forty bags of marijuana found in the back of the hatch, therefore, must be suppressed.
 THE LOADED GUN AND GUN CLIP
The search yielding the 9mm gun and gun clip was conducted after Defendant was arrested for the marijuana found in the back of the vehicle. The State seems to argue that this part of the search was conducted incident to Defendant's arrest. It is well settled that evidence obtained as a result of a search incident to a lawful arrest is legally competent and therefore admissible. In order for such evidence to be competent, however, it must be the product of a lawful arrest. If the arrest is unlawful, the evidence is inadmissible. State v. McWeeney,216 A.2d 357, 361 (R.I. 1966). In this case, the fact that Defendant was arrested based on the search of the hatch, not the marijuana on the floor, is clear from Neill's testimony.[2] That search conducted by Neill was illegal for the reasons articulated in the first part of this opinion. As such, the arrest resulting from that search was unlawful, and the evidence retrieved from the search incident to that unlawful arrest must be suppressed.
Although this Court finds grounds to suppress the gun evidence based on the previous analysis, it articulates a second rationale for so holding. The previous analysis assumes the search yielding those items was in fact conducted as a search incident to arrest. The discussion on that point was necessary to address the State's argument. However, this Court also finds it very plausible that the continued search of the vehicle producing the gun was in fact not conducted as an attempted search incident to arrest. The Court interprets the police search yielding the gun as a continuation of the illegal search of the hatch. Neill testified he wanted to search "the car." He didn't say he wanted to search "the bags in the back of the car" or "the hatch." Based on his own actions and words, it is likely Neill would have continued searching the car if he had not found anything in the hatch. There is no evidence to suggest that his continued and extensive search of the rest of the vehicle was intended as a search incident to Defendant's arrest. In other words, this Court does not believe Neill only searched the rest of the car because he had arrested Defendant. Neill hardly stopped what he was doing-he found the bags of marijuana in the hatch, told Brouillette to "cuff him" and continued searching after he called for more officers. His subsequent searches of the trunk and the rest of the car were conducted in the same manner in which he had searched the trunk-highly intrusive and damaging. For those reasons, this Court finds that the search yielding the gun and gun clip was unlawful and must be suppressed.
 THE STATEMENTS
The next issue addressed is the admissibility of Defendant's two statements. Immediately after Neill found the bags in the hatch, he arrested Defendant and once again asked who owned the bags. At that point, Defendant admitted to owning them. (Tr. of 5/17/02 at 13) Later on at the police station, Defendant told Neill that he owned the gun but that he did not want to give a statement. He was then told that if he refused to give a statement, the police were going to have to charge Santos with possession of the gun. Only after this attempt to persuade him did he decide to give a written statement admitting ownership of the marijuana, the gun and the ammunition.
The guidelines established by Miranda v. Arizona, 384 U.S. 436; 86 S.Ct. 1602; 16 L.Ed.2d 694 (1966) rest the admissibility of statements made by those subjected to custodial interrogation on whether or not the suspect was informed of his constitutional rights prior to making a statement. Dickerson v. United States, 530 U.S. 428, 435; 120 S.Ct. 2326, 2331; 147 L.Ed.2d 405, 414 (2000). In this case, Defendant did not admit owning the bags until after his arrest and upon being questioned on the subject. If the police had wanted to question him as to who owned the bags, they should have informed him of his Constitutional rights. The police conduct here is a clear violation of Miranda. Therefore, Defendant's statement admitting ownership of the bag containing the marijuana and the gun must be suppressed.
Prior to giving a formal written statement to police, Defendant was advised of his Constitutional rights and waived them. Whether a defendant's voluntary statement is admissible after he has been confronted with evidence obtained in violation of his fourth amendment rights is the issue at hand. Generally speaking, the exclusionary rule bars from introduction at trial evidence obtained either during or as a direct result of searches and seizures in violation of an individual's Fourth Amendment rights. Wong Sun v. United States, 371 U.S. 471, 485; 83 S.Ct. 407; 9 L.Ed.2d 441 (1963). Not all statements derived from an illegal arrest or search must be excluded in every case, however. An individual may make a statement if it is "sufficiently an act of free will to purge the primary taint of the unlawful invasion." State v.Jennings, 461 A.2d 361, 368 (R.I. 1983) (quoting Wong Sun v. UnitedStates, 371 U.S. at 486). Thus, the United States Supreme Court has held that statements obtained by exploitation of an illegal arrest are "fruits of the poisonous tree" and are therefore inadmissible at trial (emphasis added). Wong Sun v. United States, 371 U.S. at 485. The Rhode Island Supreme Court extended that holding in State v. Jennings, 461 A.2d at 368, to include statements "induced by confronting a suspect with illegally seized evidence." Clearly, Defendant's statement was made as a result of being confronted with illegally seized evidence — the evidence of the marijuana, the gun, and the clip. However, if Defendant's statement was "sufficiently an act of free will to purge the primary taint of the unlawful invasion," State v. Jennings, 461 A.2d at 368, it would still be admissible.
In order to make this determination, this Court must examine these factors: (1) the temporal proximity of the illegality and the confession, (2) the presence of intervening circumstances and (3) the purpose and flagrancy of the illegal police conduct. Id. Applying these factors, it is clear that the statement was made no more than a few hours after the traffic stop. No intervening circumstances occurred such that could have induced the defendant to confess with the exception of being told by police that Santos would be charged if he did not confess. If anything, that would tend to make his statement more coerced than voluntary. Additionally, since no legally permissible reason existed for the police to conduct this search in the first place, that factor does not weigh in favor of admitting this confession. This Court, therefore, finds that Defendant's confession was obtained by the exploitation of the illegal search of the vehicle Defendant was driving and must be suppressed.
 CONCLUSION
The police search of the car Defendant was driving violated his Constitutional rights under the Fourth Amendment of the United States Constitution and Article 1 section 6 of the Rhode Island Constitution. Defendant's first statement was given to police in violation of Miranda, and his second statement was a fruit of the illegally seized evidence. For these reasons, the Court grants Defendant's Motion to Suppress the forty bags of marijuana, the gun, the gun clip, and all statements made by Defendant.
[1] It is interesting to point out, however, the trooper's inconsistency on this last point. On direct examination he stated that upon asking Ms. Santos whose bags were in the back, she told him she was delivering the bags for friends back in Norwich, Connecticut. Yet when asked to state his reasons why he wanted to search the bag, he made it appear as if no one claimed ownership.
[2] From Transcript of Suppression hearing, May 17, 1999, at page 35.
 Q: You said you went into the duffle bag and you found marijuana?
 A (Neill): Right
 Q: And you pulled the marijuana out —
 A: Right
 Q: — at [that] time you . . . said to the other officer, "Cuff him"?
 A: Right.
 Q: So, he was under arrest for the marijuana; is that correct?
 A: Right.
 Q: And you told him to cuff everybody?
 A: I cuffed the other guy. . .
 Q: Everybody was under arrest at that point?
 A: Yup.
 Elsewhere, Neill showed his intention not to arrest Defendant based on the original small bag he had found on the floor of the car:
 Q: D: did you place him (Redden) under arrest once you picked up this (small) bag out of the car?
 A: No, I didn't.
 Q: So, if you thought that this was marijuana and he had violated the law, why wasn't he placed under arrest at that moment?
 A: If I placed everyone under arrest that had that small amount of marijuana, the courtrooms would be full. I was going to give him a break.